Liautaud and another v. Baptiste.

Upon the merits, the evidence satisfies us that no error was committed below.

*Judgment affirmed.*

------

Louise Liautaud and another *v.* Manon Baptiste.

3r    441
f122    794

Illegitimate children, though duly acknowledged, have no claim against the estate of their natural father, but for alimony. C. C. 224, 257, 913.

The rights acquired by children legitimated by the subsequent marriage of their parents, have no effect against gratuitous dispositions, previously made by the latter. The legitimation has no retroactive effect. It operates only from the date of the marriage. C. C. 219, 948, 1556.

A counter-letter, or something equivalent thereto, is the only proof admissible to establish simulation, not fraudulent, between the parties to a contract, or their representatives. Parol evidence is inadmissible.

A legatee, representing an ancestor, and claiming under him, can have no other means of avoiding a contract, than such as the ancestor possessed.

The father of certain natural children, who had made a sale of all his property to a third person, by a subsequent marriage legitimated his children. After the death of the father, the property was sold to a fourth. In an action by the children against the latter, to recover the property on the ground that the sales were simulated, plaintiffs alleged that it was agreed between the deceased and his vendee that, notwithstanding the sale, the former should remain the owner of the property, which should be reconveyed to him when required, or to his children in case of his death, and that the sale was in the nature of a *fidei commissum*, and, as such, prohibited by law. *Held*, that the interest of the plaintiffs, who were subsequently legitimated, not having existed at the date of the first sale, parol evidence was inadmissible to prove that it was a *fidei commissum*; that the object of the action is to enforce the *fidei commissum* complained of; and that plaintiffs cannot, under the pretext that it was a *fidei commissum*, be allowed to establish the simulation of the sale, and thereby give effect to the very agreement prohibited by law.

The object of the law-maker being to prevent those whom it disables· from receiving donations, from secretly enjoying them, all *fidei commissa*, even those in favor of persons capable of receiving, are prohibited. C. C. 1507.

APPEAL from the Parish Court of New Orleans, *Maurian,* J.

SIMON, J. The petitioners allege, that with their brother and sister, they are the only children of Ferdinand Liautaud and of the defendant, who cohabited together, but were not married~when their children were born. That by an authentic act, passed the 16th of April, 1823, their father made a *simulated sale* of all his property to

Marcelite Baptiste, who was a natural daughter of the defendant by another father, and that it was understood and agreed between the vendor and vendee, that, *notwithstanding the said sale, said vendor should always remain the owner of the property, which should be reconveyed to him by the vendee, whenever he should require her to do so ; and that, in case of his death, the vendee should convey the said property to said vendor's four children.* They state, that on the 28th of April, 1824, Marcelite Baptiste sold a lot of ground, with the consent and for the account of Ferdinand Liautaud, for the sum of $4000.

The petitioners further show that, on the 6th of August, 1826, their father and mother contracted marriage, in the presence of their children, and of three witnesses, whereby their said children, who had been previously acknowledged, at different times, and who were again acknowledged in the act of marriage, *were legitimated.* That their father died on the 11th of the same month, without having made any testament ; and that the petitioners, together with their brother and sister, were his only heirs, and, therefore, entitled to his estate, which consisted in the property conveyed by the simulated sale to Marcelite Baptiste, and which was still in the name of the said Marcelite Baptiste, at the time of their father's death, with the exception of the lot of ground above mentioned.

The petition further states, that although it had been *agreed between the vendor and vendee that all the said property should be reconveyed to the vendor,* or, *after his death, to his children,* and although this was often admitted by said vendee, Marcelite Baptiste, on the 25th of June, 1827, passed a simulated sale of all the property to the defendant. That they (the petitioners) did not remonstrate against the said simulated act, because they continued to occupy portions of the property ; and because their mother always assured them that it was passed in her name for convenience, and that the property should be owned by her and her said children jointly, each of them to own one-fifth thereof.

The petition contains further allegations, setting forth the manner in which some of the property had been disposed of by the defendant, and the reasons why, by an act passed in 1835, the petitioners declared that their father had died without leaving any

property ; and concludes by praying that they may be declared to be the true heirs of one-half of the property left by the deceased, and, as such, the true owners of the one undivided half thereof, and that the defendant may be condemned to pay them one half of the proceeds of the sales of the property by her disposed of, with interest, &c.

The answer first denies all the allegations contained in the petition, and sets up title and ownership to the property in dispute, in the defendant, by a deed of sale from Marcelite Baptiste, passed on the 25th of June, 1827. The defendant further avers, that she is a third party to, and ignorant of all motives or acts of simulation that may have existed between Ferdinand Liautaud and Marcelite Baptiste ; and that her title to the property in dispute can in no way be affected thereby. She also states that, as the plaintiffs claim to be the legitimated children and heirs of the deceased, they cannot avail themselves of the alleged simulation to destroy his own acts ; but that, on the contrary, they are bound to make good and warrant unto the defendant the title which she holds, &c.

Under these pleadings, the case was tried, without the intervention of a jury ; and, after a full investigation of the proofs of simulation adduced in evidence by the plaintiff, the judge *a quo*, being of opinion that the sale passed on the 16th of April, 1823, and the conveyance from Marcelite Baptiste to the defendant, passed on the 25th of June, 1827, were both simulated, decreed the plaintiffs to be the owners of one-half of the property in dispute, and liquidated the amount due them by the defendant for the one-half of the proceeds of the property sold by said defendant, allowing to one of the plaintiffs, to secure the recovery of his portion, the tacit mortgage given by law to minors on the property of their tutors, said right of mortgage to be exercised on all the property of the defendant. From this judgment, the defendant has appealed.

The evidence satisfactorily establishes all the different acts referred to in the plaintiff's petition, to wit : the deed of sale from Ferdinand Liautaud to Marcelite Baptiste, on the 16th of April, 1823 ; the sale from Marcelite Baptiste to McNeill, passed on the 28th of April, 1824 ; the marriage of Ferdinand Liautaud

with Manon Baptiste, celebrated on the 6th of August, 1826 ; the death of Liautaud on the 11th of August, 1826 ; the sale from Marcelite Baptiste to the defendant, executed on the 25th of June, 1827 ; the declaration made by the plaintiffs before a notary public, on the 29th of May, 1835, that their father left no property at the time of his death ; and, lastly, the acts of sale executed by the defendant, by which she disposed of some of the property in dispute, for certain prices or considerations by her received previous to the institution of this suit.

*Preaux* and *L. Janin*, for the plaintiffs. It is objected that the plaintiffs, who are Ferdinand Liautaud's children and heirs, cannot prove by parol the simulation of his sale to Marcelite Baptiste. There would be some force in this objection, if that act were simply a simulated sale, intended to confer an unjust advantage on Marcelite. But it is governed by a different principle. Its real object was a disposition *mortis causa*, or *fidei commissum*— an infraction of a prohibitive law, and therefore a nullity provable by parol by any person in interest.

By proving the simulation of this sale, we at once show its real object, to wit, a trust for the benefit of the plaintiffs. The relation in which the defendant stood towards the plaintiffs, required, on her part, the utmost good faith. Equity is peculiarly conversant with such relations, and it may not be inapt to consult its principles concerning them. Equity will relieve the children from any undue advantage the parent attempts to obtain. 1 Story's Equity, 224. It will interpose in cases, where, but for such relation, it would abstain from granting relief. Ib. 304–6. In such cases, where, from confidence, the contract has not been reduced to writing, the statute of frauds will not be permitted to be made an instrument of fraud. Ib. 323–4. Similar trusts have been allowed to be proved by parol. Gresley's Equity Evidence, 208. 2 Story's Equity, 444. So where it was agreed that the contract should be put in writing (Fonblanque's Equity, 150, 153); or where there was a part performance, for instance, where the real vendee was let into possession. 1 Maddock's Chancery, 376, 381. *Boyd* v. *McLean*, 1 Johnson's Chancery Rep. 582.

Here Liautaud remained in possession up to the time of his death, and the plaintiffs retained the possesion, and received the

rents of a portion of the property until within a month or two before the institution of this suit, when the defendant expelled them. Liautaud appeared in the act of sale to McNeill, and received the price. The defendant promised to execute a writing.

In France, parol evidence has been let in between the original parties, under circumstances less favorable. Dalloz, Dictionnaire Alphab. vol. 4, *verbo* Preuve Testimoniale, No. 103, p. 50, Nos. 280–3. Jurisprudence du XIX. Siècle, Année 1830, vol. 1, p. 70; Année 1831, vol. 2, p. 303 bis, 573; Année 1832, vol. 1, p. 509.

A circumstance of peculiar force militates in favor of the plaintiffs. Three of the defendant's four children were minors when Liautaud died, and the defendant became their tutrix. She was bound to claim from Marcelite the conveyance to the children agreed on. In case of Marcelite's refusal she ought to have sued her, put her on oath, and have brought against her the abundant evidence which at that time no doubt existed. The defendant would be responsible to her children if she had simply neglected her duty. But in this case there was no reluctance on the part of Marcelite, who was anxious to be relieved from the responsibility, and ready to do whatever the defendant required. By false promises she induced her confiding daughter to pass a sale to herself. There was no fraud on the part of Marcelite. The defendant was alone guilty of it.

The tutrix cannot screen herself under the technical rules applicable to parol evidence. She is charged with fraud, and even if a third person could object to parol testimony, she, as tutrix, cannot.

Continuing to hold out the same promises, the defendant induced three of her children to pass the act of May 29, 1835. This act is, in reality, a compromise; and as it was preceded by no account of the tutorship, is not binding upon the plaintiff Louis Liautaud. Civ. Code, art. 335. The plaintiff Louise Liautaud, was no party to it.

The agreement between Ferdinand Liautaud and Marcelite was a *fidei commissum*. *Fidei commissa* are prohibited from motives of public policy. Civ. Code, art. 1507. Like every infraction of a law *d'ordre public*, they may be proved by parol.

Chardon, De la Fraude, vol. 3, p. 148. 8 Duranton, No. 570. 2 Chardon, 39. This proof is open to the children of the *fidei committens*, from motives of public policy. 3 Chardon, 148. 2 Vazeille, Résumé, 232. If it were denied to them, the object of the law would be defeated, for a person without an interest could not attack the *fidei commissum*. Not only is parol testimony admissible, but strong presumptions will suffice. 2 Chardon, 39. 3 Chardon, 148. See also, *Tournoir* v. *Tournoir et al.*, 12 La. 19. *Fidei commissa* are prohibited by our law, even in favor of persons capable of receiving in another form; and such *fidei commissa* may be proved, by parol, by the heirs of the donor.

By the Roman law, legacies and particular *fidei commissa* were subject to the same rules.

*On appelle fideicommis particulier une disposition par laquelle l'héritier, ou un légataire est prié de rendre ou de donner une chose à une tierce personne.* Domat, Liv. 4. tit. 2. Des Leg. sect. 1.

*Et fidei commissum et mortis causa donatio appellatione legati continentur.* L. 87. De Leg. 3.

For the true appreciation of the French authorities, it ought to be observed, that the French Code does not prohibit *fidei commissa* in favor of persons capable of receiving; ours prohibits all kinds. Art. 886 of the French Code, says : " *Les substitutions sont prohibées.*" Art. 1507 of our Code, (the same as art. 40, p. 217 of the Code of 1808,) says : " *Substitutions* and *fidei commissa* are, and remain prohibited." These are the corresponding articles of our own and the French Code. In no part of the French Code are *fidei commissa, eo termino,* prohibited. But art. 911 of the French Code, which is art. 1478 of our Code, declares the nullity of dispositions made in favor of persons *incapable* of receiving, in whatever form, and under whatever disguise they may be made. These articles, therefore, prohibit *fidei commissa* in favor of incapable persons, the only kind proscribed by the French law. Our law, on the contrary, condemns all kinds of *fidei commissa*, for the reasons so forcibly stated in 12 La. 23. In the French writers we can, therefore, only expect to find authorities concerning *fidei commissa* in favor of incapable persons; but it is obvious, that so far as the admissibility of parol evidence

is concerned, they apply to cases arising under our law, where the *fidei commissum* was intended for the benefit of a person who might legally have received a legacy in another form.

There is no point more clearly established in French jurisprudence, than that concealed, tacit *fidei commissa* may be proved by parol. See, besides, the authorities already quoted, Merlin, Répertoire, *verbo* Preuve, sect. 2, § 3, art. 1, No. 8, *in fine.* (Vol. 24, p. 449 of the Brusselse dition.) Œuvres de Despeisses, vol. 2, p. 584, No. 5. Desquiron, Traité de la Preuve par Témoins, p. 147, No. 286 ; p. 148, No. 287.

That the heirs of a donor can contest the donation, if it be not made in due form of law—that the heirs of a testator may have a testament set aside, if not made in proper form, are positions too well established to require authorities in their support. By art. 1563 of the Civil Code, no disposition, *mortis causa*, shall be made, otherwise than by last will or testament. If, therefore, a disposition *mortis causa*, be made in the form, and under the disguise of an onerous contract, it is null and void. Where an estate is not insolvent, none but the heirs can question the validity of a testamentary disposition. To deny to the heirs the right of proving, by parol, that an apparently onerous contract is a disguised disposition *mortis causa*, is to declare that any person may dispose of his property, *mortis causa*, in favor of whomsoever he pleases, whether the object of his bounty be incapable or not, provided he adopt the form of an onerous contract. What the consequences of such a principle would be, the court will divine without comment.

The provision of art. 2256 of the Civil Code, which prohibits the reception of parol evidence against and beyond the contents of acts, applies to *contracts* only in cases where it would have been in the power of the party to procure written evidence, such as counter-letters, and not to testaments, or dispositions, which, under whatever form they may be disguised, are really dispositions *mortis causa*. 9 Toullier, p. 232, No. 137.

But it will be said that the plaintiffs were legitimated only five days before Liautaud's death, and that they had the rights of legitimate children only from that period, whereas the sale to Marcelite was passed several years before.

The obvious answer to this is, that the plaintiffs being acknowledged natural children by the act of July 7, 1818, had a right to claim alimony from their father's estate (Civ. Code, art. 257) ; that if they had never been legitimated, they would still be the only heirs left by Liautaud at the time of his death ; and that, therefore, they had the right of contesting the illegal disposition, *mortis causa*, by which that estate was withdrawn from them.

As they were Liautaud's heirs at the time of his death, even had they become such only by the legitimation, they had a right to his estate as it then was. Simulated dispositions, such as a sale to conceal property from creditors, could not be impugned, by parol evidence, by heirs thus situated ; but it is far different in regard to dispositions *mortis causa*. If the simulated act be proved to have been a disposition, *mortis causa*, it is the same as if it had been made in the express terms of a will ; and the capacity to take under a disposition *mortis causa*, or to contest it, is determined by the law and the state of things existing at the time of the testator's death. As to these, the heir is not considered in law as the same person as his ancestor. For he may set aside a testament for defects of form, although he should be a legatee. The plaintiffs' case is precisely similar. The heir has a right to inquire by what acts, *mortis causa*, the property, which otherwise would have descended to him, is diverted into a different channel ; and if these acts are not in compliance with the strict requirements of the law, he may set them aside ; these requirements being eminently *d'ordre public*. Hence it also follows, that he can prove their simulated character.

The prescription of five years (art. 3507,) relied on, applies only to the parties to an act. The plaintiffs were not parties to Marcelite's sale to the defendant. Besides the plaintiffs were in possession ; the defendant, until lately, always professing her willingness to carry out Liautaud's and Marcelite's intention. There was bad faith on her part ; and prescription could commence only from the time when she first claimed an exclusive title and right of ownership.

*Soulé*, for the appellant. The parties to an act cannot allege simulation, unless they can show a counter-letter, where the

act alleged to be simulated is one of those which must be reduced to writing.

In all cases, except those where there is a counter-letter, simulation can only be invoked by third persons. Merlin, Repert. vol. 31, p. 252, 253. Civ. Code, art. 2256. Toullier, vol. 9, p. 223, 237. Duranton, vol. 13, p. 373. Journal des Audiences, Supp. vol. 8, p. 65. Ib. vol. 9, p. 59.

The act assailed on the ground of simulation, was executed before the plaintiffs were legitimated by the marriage of their father and mother; and they cannot sue to annul acts done by their father previous to their legitimation. Journal des Aud. vol. 9, p. 177.

Were the testimony adduced in the case admissible, it would not conclusively prove the alleged simulation.

The appellant pleads the prescription of five years against the action brought by the appellees. Civ. Code, art. 3507.

SIMON, J. Without being necessary to inquire into the facts of simulation established by the parol evidence found in the record, which parol evidence comes up subject to all legal exceptions, (reserved by the defendant's counsel, in the same manner as if he had taken a bill of exceptions,) and will become the subject of a farther inquiry as to its admissibility, the first question which presents itself to our consideration, is, what were the legal rights of the plaintiffs, as children and heirs of Ferdinand Liautaud, at the time of the sale of the property in dispute to Marcelite Baptiste.

It cannot be controverted that, in April, 1823, Ferdinand Liautaud, had no legitimate children ; and that the plaintiffs, and their brother and sister, though duly acknowledged by an act passed in 1818, had no other rights to exercise against the estate of their natural father, than those of illegitimate children, who, by law, are only entitled to claim alimony. Civ. Code, arts. 224, 257, 913. They were not the forced heirs of Liautaud, and could raise no pretensions to any part of his estate. But they were legitimated by the subsequent marriage of their natural father with the defendant ; and the question occurs, what rights have they acquired by this subsequent legitimation ? By art. 219 of the Civil Code, children legitimated by a subsequent marriage, have the same rights, as if they were born during marriage—in the French text, " *nés de ce mar-*

*iage.*" If this article stood alone, it might, perhaps, be said, with some force, particularly under the English and governing text of our law, that the rights acquired by legitimated children, have a retroactive effect, revert back to the time of their conception; and that, therefore, their right to inherit, or to claim their legitimate portion as forced heirs, has effect against the gratuitous dispositions made by their parents since the conception of their children, though before their legitimation. But on referring to art. 948, we see clearly that the law has limited the right of legitimated children to *their taking only the successions which are opened since the marriage of their father and mother;* and under art. 1556, *all donations inter vivos, are to be considered as revoked up to the disposable portion by the legitimation of a natual child by a subsequent marriage, if the child be born since the donation.* Now, it cannot be pretended that the plaintiffs were born since April, 1823; and, if the act of sale attacked in this suit as simulated, instead of being, as alleged, a fictitious sale, were a donation *inter vivos,* it is clear that the plaintiffs could not attack it, nor claim its revocation. The gratuitous title given by their father would stand and have its legal force and effect, notwithstanding the subsequent rights acquired by the children, by virtue of their legitimation. Toullier, v. 2, No. 929, upon an article of the Code Napoleon similar to ours, says : " *Il faut observer que l'effet de la légitimàtion n'est point rétroactif, et qu'elle ne remonte pas à la naissance de l'enfant. La légitimation n'opère son effet que du moment où existe le mariage qui l'a produite. Tout ce qui s'est passé dans la famille du père ou de la mère avant leur mariage est étranger aux enfans légitimés par ce mariage.*" This doctrine is also entertained by Merlin, *verbo* Legitimation, sect. 2, §
3, art. 4, who gives his opinion on the art. 960 of the Code Napoleon, corresponding with the 1556th of our Code. By Grenier, Donations, vol. 1, No. 193. By Favard de Langlade, *verbo* Legitimation, § 3. By Dalloz, *verbo* Filiation, chap. 3, sect. 1, § 9, who says : " *Leur âge, comme légitimes, ne compte que du jour de la légitimation ; tous droits acquis antérieurement sont bien acquis.*" See also, Journal des Audiences, v. 8, Supp. p. 65. Ib. v. 9, p. 177. It results, therefore, from the provisions of our law, as well as from the weight of the authorities above quoted, that

Liautaud was at liberty to dispose of his property as he pleased, in April, 1823 ; that the sale made then to Marcelite Baptiste, considered either as a sale, or as a disguised donation, or as a simulated conveyance, or in any other manner, cannot be disturbed by persons who had then no legal right to claim against, or to exercise over the property ; and that if Marcelite Baptiste had died before disposing of the property, it would have passed to her heirs, without the plaintiffs having any legal capacity to claim or recover any part thereof.

But, instead of keeping the property so as to let it go to her legal heirs, Marcelite Baptiste conveyed it to the defendant ; and hence, it has been strenuously contended, that this conveyance, also simu lated, was passed in execution of her previous agreement with the vendor, and for the purpose of transferring the property to the plaintiffs and the other children, through their mother. This sale was passed after the legitimation, and if the object thereof, were really such as represented, it would have been more simple to execute the sale directly in favor of the children, to which there was then no possible impediment. However it may be, Marcelite Baptiste gave an absolute title to the defendant, who acted for herself and in her own name. It is clear, therefore, that the plaintiffs possessed no right at the time that the first sale was executed by Liautaud to Marcelite Baptiste ; that they only acquired the rights of legitimate children in August, 1826 ; and it is obvious that the only title they can set up now, is as heirs of the deceased, since the latter period. They have nothing to do with what took place previously ; they cannot disturb the acts of their father, and must take his succession in the situation in which they found it at the time of his death, without being able to attack any disposition of his property made previous to their legitimation. In other words, *they merely represent the deceased,* and are only entitled to exercise his rights. If so, how can they be admitted to pretend that the sale from Marcelite Baptiste to the defendant, is the consequence of that from the deceased to Marcelite ? If the simulation alleged against the first sale, continued in the second, does this last circumstance give the plaintiffs a greater or better right to claim the property from the defendant, than they would have had against Marcelite Baptiste or her heirs, if she had not

parted with her title to it, and could Liautaud himself have set up any claim to the property as against Marcelite Baptiste, or the defendant, who acquired her rights, on the ground of simulation?

On this part of the case it is proper to remark, that this action is based on the allegations, that the two sales complained of are *fictitious and simulated.* The petition contains no allegation of fraud or error; and we are called upon to give effect to a pretended agreement, said to have existed between the parties, by which it was understood that, *notwithstanding the sale, the vendor should always remain the owner of the property, which should be reconveyed to him by the vendee, whenever he should require Marcelite Baptiste to do so, and that in case of his death, it should be reconveyed to his children.* There is no rule of evidence better known and settled in our jurisprudence, than this, that the fact of simulation admits of no other proof between the parties to a contract, or their representatives, than a counter-letter, or something equivalent thereto. In 2 Mart. N. S. 14, this court said, that where a legatee, representing the ancestor, claims under and through him, he has no other means of avoiding the contract but those which the ancestor possessed; and the principles of law recognized in the case of *Badon* v. *Badon,* 4 La. 169, are fully applicable to the present case. This has been the general and uniform course of our jurisprudence (6 Mart. N. S. 206. 8 Ib. N. S. 448. 3 La. 4. 4 Ib. 351); and in the case of *Delahoussaye* v. *Davis' Heirs, &c.* 19 La. 412, we again recognized the rule, that a simulation, not fraudulent, cannot be proved by parol, as between the parties. Civ. Code, art. 2256. Merlin, *verbo* Simulation. Duranton, v. 13, Nos. 338, 339. Toullier, vol. 9, § 233, 234, 247. It is clear, therefore, that Liautaud himself would have vainly attempted to prove that his sale to Marcelite Baptiste was feigned and simulated, in any other manner than by producing a counter-letter; and that the parol evidence introduced in this case, would have been rejected. If so, surely, the appellees, who represent him, and claim through and under him, cannot be allowed to avail themselves of it.

Under this view of the question, we must come to the conclusion that the appellees were precluded from attacking the contracts complained of on the score of simulation, unless they were

ready to establish it by written evidence ; and that the parol evidence excepted to by the appellant's counsel, was improperly and illegally admitted.

The position, however, assumed by the appellees' counsel, that the contracts complained of were in the nature of *fidei commissa*, and prohibited by our law, has been insisted on with a good deal of plausibility ; and we must confess that we were, at the first blush, impressed with the idea that it was the stronghold of their case. Further reflection, however, has enabled us to discover the fallacy of the argument, which consists in maintaining that, the agreement between the deceased and Marcelite Baptiste, being a *fidei commissum*, prohibited by law, this infraction of the law can be proved by parol. This would perhaps be true, if the interest of the appellees, adverse to the *fidei commissum*, had existed at the time of the act; and if the alleged disguised illegal disposition, having been resorted to, to defeat these acquired rights, stood in conflict with the exercise of them. But, as we have already said, their interest did not then exist ; and it seems to us that they cannot, under the pretence that the contract by them attacked, was executed to cover a *fidei commissum*, be allowed to establish its simulation, and thereby give effect to the very act which the law has prohibited. And indeed, do not the appellees seek to enforce, in this action, the very *fidei commissum* by them complained of? Is not the true object of this suit, under the allegations of the petition, to give effect to the agreement pretended to have existed in their favor between the deceased and Marcelite Baptiste, and to have been subsequently carried into execution by the latter, by the sale of the property in dispute to the defendant ; and would not the judgment, which we are called upon to render, be, in effect, declaratory of the appellees' right to recover under the very agreement by them treated as a *fidei commissum ?* Surely it would ; and we are constrained to declare, that they cannot be entitled to reap the fruits of a flagrant violation of the law, on the part of the person whom they represent, and under whom, and in whose right, they claim. Under the application of the maxim, " *De turpi causa non oritur actio,*" the law gives them no action to enforce it. In the case of *Tournoir* v. *Tournoir et al.*, 12 La. 23, relied on by the appellees' counsel, this court held, that the object of the law (Civ. Code, art.

1507,) being to prevent the persons, whom it disables from re
ceiving donations, from secretly enjoying them, all *fidei commis-
sa*, even those in favor of persons capable of receiving, are pro-
hibited. This doctrine is certainly correct, but the case quoted is
not analogous to the present. There, the proof was adduced by
the party whose interest was adverse to the existence of the *fidei
commissum ;* and was not introduced for the purpose of giving ef-
fect to the illegal disposition of the testator, but in order to defeat
its object. Here, on the contrary, were we to admit the evidence
offered to prove the alleged simulation, the consequence would be,
that, if the fact were sufficiently made out, the appellees would be
allowed to recover the property which was the object of the re-
probated agreement by them called a *fidei commissum.* Such a
doctrine cannot be sanctioned by this court.

Upon the whole, we think the lower judge erred, in receiving
the parol evidence introduced by the plaintiffs to prove the fact of
simulation, and in giving effect to the agreement declared upon in
their petition.

It is, therefore ordered, that the judgment of the Parish Court
be reversed ; and that ours be for the defendant, with costs in both
courts.