## WIDOW R. BARNEBE *v.* MRS. S. SUAER et ux.

Evidence may be received in explanation of an authentic act when it does not contradict, vary, alter, enlarge, or restrict it.

Where there is nothing in the context of a will, from which it is apparent that a testator has used the words in which he has expressed himself in any other than their strict and primary sense, but his words, so interpreted, are insensible with reference to extrinsic circumstances, a Court of law may look into the extrinsic circumstances of the case to see whether the meaning of the words be sensible, in any popular or secondary sense, of which, with reference to these circumstances, they are capable.

A donation made to a minor, under the age of puberty, must be accepted by his tutor.

A minor, arrived at the age of puberty, but not emancipated, must accept it under the authorization or with the concurrence of his curator.

Nevertheless the parents of a minor, whether he be arrived at the age of puberty or not, whether he be or be not emancipated, and the other *legitimate descendants, even in the lifetime of the parents,* though they be neither tutors nor curators to the minor, may accept for him.

The persons who have treated with a minor, the person interdicted, or of insane mind, or with a married woman, cannot plead the nullity of the agreement, if it is sought to be enforced by the party when the disability shall cease, or by those who legally administer the rights of such person during the disability.

An act shall be passed before a Notary Public, and two witnesses of every donation *inter vivos* of immovable property, of slaves or incorporeal things, such as rents, credits, rights or actions, under the penalty of nullity.

Whatever is done in contravention of a prohibitory law, is void, although the nullity be not formally directed.

The action of nullity, or rescission of contracts, testaments, or other acts, is prescribed by five years; and, as prescription raises the presumption juris et de jure, that the donation was duly accepted, the property of the object given is transferred to the donee, without the necessity of any other delivery. Quem de evictione, tenet actio, cum dem agentem repellit exceptio.

All donations *inter vivos,* made by persons having neither children nor descendants, actually living at the time of the donation, of whatever value those donations may be, and on whatever account they may have been made, should they even be mutual, not excepting such as were made in favor of marriage by any but the ascendants of the married persons, or by the one of them to the other, shall be considered as revoked up to the disposable portion by the birth of children to the donor, even of a posthumous child, or by the legitimation of a natural child by a subsequent marriage, if the child be born since the donation.

Donations *inter vivos* are liable to be revoked or dissolved on account of the following causes : 1. The ingratitude of the donee; 2. The non-fulfilment of the eventual conditions which suspend their consummation ; 3. The non-performance of the conditions imposed on the donee ; 4. The legal or conventional return.

APPEAL from the Fifth District Court of New Orleans, *Eggleston,* J. *Edward Bermudez,* for plaintiff. *E. Filleul,* for defendant and appellants.

ILSLEY, J. On the 3d November, 1832, by act before Louis T. Caire, then a notary public, in and for the Parish of Orleans, the plaintiff made a donation of a lot of ground, situate in Tchoupitoulas street, to her daughter, then two years old.

In October and November, 1860, after a period of twenty-eight years, she filed two petitions in the Court below, praying that the said act of donation be annulled.

In the original petition, the grounds of nullity were three-fold.

1. That she only *apparently donated* the said lot of ground to her daughter by the act of the 3d November, 1832.

2. That the donation was never accepted by any tutor or curator of the daughter, or by her, since she became of age.

3. That the act of donation was never executed, and that she always remained in possession.

In her supplemental petition, she urged three additional grounds.

4. That she is the natural daughter of Mary Austives, and the natural mother of her daughter.

5. That when she signed the act of donation, *the cholera was raging in this city, and that the donation never was intended for an irrevocable donation ; that the same was to be revocable.*

6. That since the execution of the same act she has had a child, who is still living.

The defendants answered :

1. That the plaintiff shows no ground of action.

2. A general denial.

3. An admission of the execution of the act of 3d November, 1832, and the averment that said act is in due form, good and valid in law.

4. The prescription of *five* and *ten* years.

From a judgment rendered in the lower Court in favor of the plaintiff the defendants have appealed.

In this Court, the case is argued on both sides with distinguished ability, and turn the scale as it may, we are greatly aided in its examination, by the careful and elaborate manner in which each counsel has prepared and presented the different points on which he relies.

It is argued by the defendants, that the plaintiff shows no cause of action, and that this exception being peremptory, must be considered independently of any other matter of defence.

For reasons, which we shall in due time make known, we think the case should be examined on its merits.

We will observe, before proceeding to investigate the real question involved in the case, that we are satisfied that the act of donation is drawn in due legal form, and that unless the acceptance of it, in the same act is a nullity, it would convey to the donee a good legal and valid title.

The principal ground of nullity, relied on by the plaintiff, to have the donation declared void for want of legal acceptance, was that the person who accepted it for the minor Marie Anstives was not the legitimate but the illegitimate grandmother of the donee, and in order to prove this fact, the plaintiff offered evidence, both oral and written, which was received by the Court, and excepted to by the defendants, who have earnestly directed our attention to the bills of exception which they took to the rulings of the Court permitting its introduction.

We do not think the Court erred in receiving this evidence, as it did not contradict, vary, alter, enlarge, or restrict the act which is attacked. The defendants say that the word grandmother has a legal meaning, and the plaintiff cannot be permitted to prove that it means natural grandmother, in the act signed by her. The third proposition laid down by Wegrane, in his admirable work on Wills applies, we think, very aptly to

the question now presented. It is to the effect that "where there is nothing in the context of a will, from which it is apparent that a testator has used the words in which he has expressed himself in any other than their strict and primary sense, but his words, so interpreted, are insensible with reference to extrinsic circumstances, a court of law may look into the extrinsic circumstances of the case, to see whether the meaning of the words be sensible, in any popular or secondary sense, of which, with reference to these circumstances, they are capable.

The most striking example, he says, are those in which a popular or secondary interpretation has been put upon the word *child*, *son*, and *my estate*, and other similar cases. Thus the word *child*, though in strict construction it means a *legitimate* offspring, may be applied to an *illegitimate* offspring, where the circumstances of the case make it impossible that the testator, who must have had some meaning, used it in such a strict and primary sense.

So, *son* means an immediate descendant; where, however, with reference to extrinsic facts, it is impossible that the word can have been used in such, its proper sense, that construction of the word is, of absolute necessity, excluded, and the necessary inference that the testator used the word in some improper or inaccurate sense, lets in the enquiry, in what sense the testator used it. We think the rule a sound one, and not inapplicable to such a case as that now presented.

It is abundantly proved that Marie Austives, when she accepted the donation, was the natural or illegitimate grandmother of the donee, and this fact established, the plaintiff submits to this Court for its solution, the following legal problems :

1. Was Marie Austives a legal agent ?
2. Was she disqualified from being so by law ?
3. Was her acceptance a nullity ?
4. Was that nullity absolute or relative ?
5. Was plaintiff admissible to impugn the act.
6. Was prescription opposable to her ?
7. Was she estopped by the maxim, Quom de evictione ?

I and II. By Art. 1533 of our Code, the only persons designated to accept a donation for a minor, are his tutor, whose *duty* it is to accept it for him ; his parents and his other legitimate ascendants, who *may* accept for him, and this would imply that no other persons whatever may accept for him.

The acceptance of the donation to the donee, made by Marie Austives was, therefore a nullity.

III and IV. But whether the acceptance of a donation by an unauthorized person is an absolute or relative nullity is a question of vast importance, and our jurisprudence furnishes us with no exact precedent, to aid in its solution.

For many years in France, previous and subsequently to the passage of the Napoleon Code, this very question has been a vexed one. Among

jurists who adopt the one or the other theory, we find the names of the most distinguished writers in that country, so eminent for its profound and brilliant expounders, and commentators of the law, whence our own Code is mainly derived. In *Duplessis* v. *Kennedy*, 6 La., it was said, "fortunately, this Court is not called on to reconcile these discrepancies," still, as the question should be put at rest in our own jurisprudence, and we do not hesitate, for reasons which we shall, in due time, adduce, to adopt the conclusion reached by Marcadé, that such a nullity is merely a relative one : que la donation acceptée par un incapable seul, n'est pas nulle *absolument ;* elle ne l'est qu'au profit de l'incapable. This is the same doctrine as that laid down in the case referred to of *Duplessis* v. *Kennedy*, 6 L. R. 243, which rests on Art. 1785 of our Code ; and which article, we think, viewing a donation as a contract (Marcadé on Art. 894, §§ 440, 441), applies as well to this case as to that of *Duplessis* v. *Kennedy*."

It is true that the example given by Marcadé, Art. 935 C. N. § 650, is where the acceptance is made by the incapable person himself, and not by another for him, and this was the case in *Duplessis* v. *Kennedy;* but we think *that* immaterial in determining the nature of the nullity, for Pothier, in treating generally of an acceptance of a donation by an unauthorized person, says: "Nous avons à présent à voir par qui l'acceptation peut être faite. Elle peut se faire, ou par le donataire lui-même, ou par son procureur, soit spécial, soit général, (see Art. 1529 La. Code,) par son tuteur, par son curateur ou autre administrateur. Une acceptation faite par toute autre personne qui n'aurait pas de mandat et qui déclarerait se porter fort pour le donataire absent, ne serait pas valable, et la donation ne vaudrait que du jour de la ratification expresse qu'en ferait le donataire par un acte devant notaire, dont il doit rester minute."

Now, this would be a mere nullité respective ou relative; for, as observes Biret in his Traité de Nullité, "La nullité absolue, ou d'ordre public, ne se couvre jamais par la ratification; ce principe est confessé par tous les auteurs, mais la nullité relative, ou respective, peut être couverte par la ratification de l'acte qui en est vicié." (Vol. 1, p. 33.)

But, apart from the reasons which we have just advanced in support of the doctrine of relative nullities as applied to this case, let us look into the section of the Code which treats "Of the form of Donations inter vivos," commencing at Art. 1523. That is the only article in that section which prescribes the penalty of nullity and inflicts it, wherever its provisions are not observed, that "An act shall be passed before a notary public and two witnesses, of every donation inter vivos of immovable property," etc., etc. It can hardly be supposed that the learned jurists who prepared our Code, and the Legislature which adopted it, were not aware of the pending controversy among jurists, as to the species of nullity, whether absolute or relative, which tainted an irregular acceptance of a donation, and that, had they deemed such an acceptance absolutely void, it would not have been so specially declared.

There is nothing prohibitory in Art. 1533, and any infraction of, or

deviation from its enactments, does not fall under the ban of Art. 12 of the Civil Code.

In the case of *Susan Broadwell* v. *Benjamin Rodriguez*, lately decided in this Court, we deemed the rule laid down by Solon, in his Théorie de la Nullité, a sound one (vol. 1, p. 28): "Dans le doute si la nullité est d'ordre public ou de droit privé, le silence du législateur doit être interprêté en ce sens que la nullité n'a été portée que dans un intérêt privé; on conçoit, en effet, que si elle était d'ordre public, le législateur l'aurait exprimé, ou du moins l'aurait donné à connaître, et que le juge ne pourrait pas s'y méprendre. Dans le doute il doit toujours se prononcer pour la validité de l'acte. Et hæc quidem interpretatio per quam actus sustenitur dicitur regina interpretationem.

In *Ross* v. *Ross*, 3 A. 533, it was held, that every relative nullity is susceptible of ratification and is prescribed by ten years. Art. 2218 C. C. and Art. 3507 C. C. says: "The action of nullity or rescission of contracts, testaments, or other acts, is prescribed by five years, and, as prescription raises the presumption juris et de jure, that the donation was duly accepted, "the property of the object given is transferred" to the donee without the necessity of any other delivery. Art. 1537 C. C.

Besides the bar of prescription interposed against the plaintiff's action, we think she was estopped from prosecuting it, as by law she was, at the time of the donation, the tutrix of the child, Art. 274 C. C., and this, according to the maxim Quem de evictione, tenet actio, cum dem agentem repellit exceptio.

Pothier, vol. 7, p. 447: "Si le tuteur avait lui-même fait la donation à son pupille, il ne pourrait opposer le défaut d'acception; car, si la donation est nulle faute d'acceptation, il en est, en sa qualité de tuteur, responsable de n'avoir pas fait créer un curateur à son mineur pour l'accepter." "Un père, says Marcadé, Art. 935, No. 658, serait dans le même cas pour l'enfant, dont il serait administrateur légal; puisqu'il est alors, comme l'est le tuteur après la mort de l'un des parents, le représentant de l'enfant, obligé de leur rendre compte de tout ce qu'il a mal fait, ou négligé de faire, pour l'administration de la fortune de cet enfant."

Troplong, Art. 935, No. 1135, and Toullier, tome 5, No. 202, say: "Mais ce recours doit-il exister contre le tuteur lorsque c'est lui-même qui est donateur, et qu'il a fait la faute de ne pas faire nommer au mineur un tuteur ad hoc? Il a fait tort au mineur au même temps qu'il voulait lui faire du bien. Il est garant du préjudice qui en résulte. Au reste la garantie se borne à le priver de l'action de nullité."

And Coin de Lisle says: "Mais le tuteur même donateur peut, selon les circonstances, être déclaré responsable du défaut d'acceptation, quand ce défaut consiste dans une nullité à laquelle le tuteur a participé; mais, par exemple, si au lieu de laisser agir le subrogé tuteur, il a fait accepter la donation par le mineur qu'il aurait assisté,—dans ce cas et d'autres semblables, la responsabilité peut péser sur le tuteur, parceque c'est en

cette qualité, et non comme donnateur, qu'il a agi dans l'acte d'accepta-
tion, nul par son fait."

But there was another ground of nullity: that since the execution of
the act of donation, the donor had a child, which is still living. It seems.
that the child was an *illegitimate* one; and, in order to revoke a donation,
the child must be legitimate, or legitimated by a subsequent marriage,
which is not so in this case. C. C. 1546, 1556. *Letand* v. *Baptiste*, 3 Rob.
441; But Article 1546 is repealed by the Act of 15th March 1855, § 16,
p. 79, R. S.

We should not have deemed it necessary to examine all the points
presented in this case; but we have done so, because they involved impor
tant principles of law, and because they have been pressed on both sides
with great zeal and earnestness.

The judgment of the lower Court must be reversed.

It is therefore ordered, adjudged and decreed, that the judgment of
the lower Court be reversed.

It is further ordered, adjudged and decreed, that judgment sustaining
the validity of the act of donation described in the pleadings, passed
before Louis T. Caire, a Notary Public for the city of New Orleans, on
the 3d November, 1832, be, and it is hereby rendered in favor of the
defendants, and against the plaintiff, who is hereby condemned to pay
the costs in both Courts.