HORACE BEAN and others *v.* THE MISSISSIPPI UNION BANK.

It is not necessary to support an attachment, that the bills of exchange on which the garnishees are liable, should be within this state, nor that the evidence of the debt should be seized. There is, in this respect, a wide difference between an attachment, and a seizure under execution. Any debt due by a resident to a non-resident, whether by note, acceptance of a bill, endorsement, or otherwise, will support an attachment. Payment by a garnishee under a judgment against him, will protect him from any demand by his non-resident creditor.

An attaching creditor can recover of the garnishee no more than his debtor, the creditor of the garnishee, could have recovered at the date of the attachment.

An exception by the garnishees, in a suit against a corporation existing in another State, filed after issue joined, that the plaintiffs did not make certain assignees or trustees of the corporation, under a deed of assignment, parties to the action, will be disregarded where it does not appear that the plaintiffs were parties to the deed, or that they, or the garnishees had notice of the assignment of the debt attached, previous to the institution of the suit, and neither the corporation nor the assignees ask to be heard.

Where an attachment has been issued against a debt due by garnishees to a corporation existing in another State, the former cannot be discharged by reason of transactions acting with their creditors, after notice of the attachment. A garnishee is a kind of stake-holder. He cannot enter into the contest between the plaintiff and defendant, nor change his position towards either, after notice of the attachment. He is to render a true account, and can contest only as to the amount alleged to be due by him, contradictorily with both parties, and must pay to the party entitled thereto, the balance found to be due. Nor can he be released by a payment made by the drawers of the note on which he was indebted as endorser, if made after notice of the attachment.

Where, in an action against a Bank on its notes, plaintiffs attached a debt due to the Bank by persons who were made garnishees, the latter will be entitled to discharge their debt in notes of the Bank, only where they prove that they were in possession of them previous to the attachment. C. C. 2212.

It is not to be expected that a plaintiff can describe in his petition with great accuracy the debts, or forms of the obligations between his debtor and the garnishees in an attachment suit. He has not, in many cases, the necessary information to enable him to do so.

APPEAL from the Commercial Court of New Orleans, *Watts*, J.

GARLAND, J.   The plaintiffs sue on a number of the post notes of the Union Bank, bearing interest on their face at the rate of five per centum per annum, and they further claim fifteen per cent. per annum, as the damages imposed by the charter of the Bank, for refusing to redeem their notes in specie when presented, which refusal is shown by an endorsement on each note, made by the officers of the Bank, at the time of presentment.   It is further alleged, that N. & J. Dick & Co. are indebted to the Bank in a large sum ; and they are cited as garnishees, and interrogated as to their indebtedness.   A citation was served on them on the 14th of January, 1842.   On the 21st of the same month, they answered, denying that they were indebted to the Bank in any sum. The verity of their answers has been traversed by the plaintiffs, who undertake to prove their indebtedness.

It is shown by the testimony, that, in the month of May, 1839, two persons of the name of Denson, with one Rawlings, drew two drafts, or bills of exchange on the garnishees, payable nine months after date, for $5000 each, in favor of H. R. W. Hill & Co., in which firm Dick & Co. were partners.   In the same month, one John Hunn and others, also drew a draft on said garnishees, for $1100, payable eight months after date.   These drafts were accepted by the garnishees, discounted by the Bank for the benefit of the drawers or endorsers, and at maturity protested for nonpayment.   After the drafts of the Densons were protested, they went to the Cashier, or some other officer of the Bank, and made an arrangement, whereby about one-fourth of their amount was to be paid, and a renewal to be made for the balance, payable at a future period.   This arrangement was never sanctioned by the Directors, nor was the full amount proposed to be paid, actually paid previous to this attachment.   The arrangement, consequently, was never consummated, and the drafts were by the Bank put into the hands of their attorney, to institute suits against the drawers, which was done to the knowledge of Hill, one of the defendants, although it does not appear that the suits were ever prosecuted to judgment.   The Bank does not appear to have released the garnishees, in any manner, previous to the commencement of this suit, although there is some reason to believe that

they supposed themselves discharged, as to these two drafts, in consequence of a supposed payment and renewal made by the drawers; but, in fact, neither the drawers, endorsers, acceptors, nor the Bank had changed positions, from the time of the proposed arrangement in 1840, up to the time when this suit was commenced. In November, 1842, nearly ten months after this attachment, the Densons, who were the drawers of the drafts, went to the Bank in Mississippi, made a further payment on account of them, and gave their note or notes, payable at a future period, for the balance, in which note or notes the garnishees are bound. This arrangement was made after all the parties knew of the attachment. Hill was in Jackson, where the Bank was located, when the arrangement was made, and no doubt knew that it was going on, although he told the officers of the Bank, that he would have nothing to do with it.

As to the draft drawn by Hunn, neither the Bank, the drawer, nor the garnishees did any thing with it, (so far as the record shows,) until the 25th of January, 1842, when the latter paid it to the Bank in Jackson, being four days subsequent to the denial of indebtedness being filed.

Upon these facts, and some others which will be noticed in connection with the different points in the case, a judgment of nonsuit was rendered, and the plaintiffs have appealed.

The answer of the attorney of the Bank is a general denial of all the allegations in the petition; and, as between it and the plaintiffs, it is sufficient to say, that they are clearly entitled to a judgment, if it shall appear, that the garnishees are indebted, so that the attachment shall have something to rest on. The real contest is between the plaintiff and the garnishees. The latter, at first, denied that the plaintiffs were the owners of the notes sued on, but that fact appearing satisfactorily, they now contest the right to recover of them, on the ground of the misconduct of the attorney of the Bank in Mississippi, and the fact of his being largely interested in the suit. It appears, that the plaintiffs are the holders of a large amount of Union Bank notes, which as brokers, they had purchased at a discount of about seventy per cent. One C. R. Clifton, who was the attorney of the Bank, and had in his hands the two drafts of the Densons, for the purpose of

suing the drawers, and collecting the amount, gave information to the plaintiffs, or their attorneys, of the indebtedness of the garnishees on them, and it was agreed, in consequence of the said Clifton's information, and of his being at the expense of prosecuting this suit, that he should have for his share, in the event of recovery, one-half of what may be made over the sum of thirty per cent, which the plaintiffs are first to receive. This agreement, it is contended, ought to prevent a recovery; but we are unable to see any tenable grounds upon which we can base such an opinion. It may be that the conduct of the attorney is highly exceptionable; but he is not the agent of the garnishees. The Bank does not complain of his conduct; and, if the plaintiffs choose to give him a portion of their demand for his information and services, we suppose they have a right to do so. The misconduct and interest of the attorney in Mississippi, cannot prevent the plaintiffs from recovering whatever the garnishees may justly owe the Bank; their liability is not increased, nor lessened by his misconduct. The plaintiffs have a sufficient interest in the notes to maintain an action on them, and might, if they thought proper, give away the whole amount when recovered.

It is contended by the counsel for the garnishees, that their indebtedness cannot be attached, as the bills of exchange, on which they are liable, are not in the State, and our attachment laws never contemplated the seizure of such rights. We cannot give our assent to this doctrine. If it be true, those laws would, in many cases, be inoperative. It is upon the debtors of non-residents, that the attachment laws are specially to operate; and if it were necessary to seize the evidence of the debt, there would be very few cases in which an attachment would lie. There is, in this respect, a wide difference between an attachment, and a seizure under execution. An indebtedness to a non-resident by a resident, whether by note, acceptance of a bill, endorsement, or other mode, may be brought under the operation of our attachment laws, by garnishment, at the instance of a creditor of the non-resident creditor, and no serious evil can result from it, as a judgment against, and payment by the garnishee, will protect him from any demand on the part of his non-resident creditor.

The counsel for the garnishees further contends, that the

attaching creditor has no more right against the garnishees than the Bank has ; and, that as the Bank had, in 1840, agreed with the Densons to renew the bills and release them, they are discharged. That the plaintiffs cannot recover more than the Bank could, at the date of the attachment, is very clear. If, therefore, on the 14th of January, 1842, the Bank could not have recovered on the acceptances of the garnishees, the plaintiffs cannot. But what is there to prevent such recovery ? The counsel answers—the agreement with the Densons. The evidence does not show the particulars of that agreement ; but suppose it clearly proved, it is shown, beyond all question, that it never was assented to by the Directors of the Bank, nor executed by the parties who proposed it. The Bank afterwards brought suit against the drawers of the bills in Mississippi, of which fact Hill was informed, and the full effect of the acceptance of the garnishees remained unimpaired, although they may have erroneously supposed the debts discharged. We see nothing in the record calculated to raise a doubt that, if the Bank, on the 13th of January, 1842, had sued the garnishees, it could have recovered a judgment on their acceptances.

It is further objected, that the plaintiffs have not made the proper parties to this suit, as the Bank, in the month of October, 1841, made an assignment of all its effects to assignees or trustees, for purposes in the deed mentioned ; and it is contended, that the assignees should have been made defendants. It does not appear that the plaintiffs were parties to that deed ; that they, or even the garnishees, previous to this suit, had notice of it, or of any assignment of the bills in question. The debt claimed by the plaintiffs is due from the bank, and we are not prepared to say, that it can, by its own act, evade the responsibilities it has incurred, and avoid actions by making an assignment of its effects. The Bank does not oppose any plea of the kind ; the assignees have not presented any claim, or asked to be heard ; and we do not think it competent for the garnishees to interpose such an exception, which they did not do, until a late stage of the proceedings, and after issue joined.

The next point raised is, that the attachment of the liability of the garnishees as acceptors of the bills, cannot prevent the Bank in Mississippi, from receiving payment of the bills there, they being

in its possession ; and that neither the court, nor these parties, could prevent the Densons from paying the Bank, whereby the whole obligation was discharged. This argument is certainly plausible ; and if the Densons had had no knowledge of the attachment, nor the garnishees any notice of the intended settlement, it would have great weight : but it is clearly shown, that in the spring or summer of the year 1842, the garnishees wrote to the Densons, informing them of the attachment, and requesting the drafts to be forwarded to them, (the garnishees,) as they supposed they had been taken up. When the settlement was made in November, 1842, the Densons, the Bank, and the garnishees, were all informed of the pendency of this suit ; and we have no doubt, Hill, one of the garnishees, who was in Jackson at the time, knew that the arrangement was about to be made, although he said he would have nothing to do with it. It is in fact shown, that the note or notes given in renewal, were signed by him, in the name of his firm, jointly with the Densons ; and for the amount of them, the parties are now debtors to the Bank. A considerable portion of the original debt is, in fact, still owing, and the garnishees are bound for it, not contingently, but actually. Article 2145 of the Civil Code says, that "payment made by a debtor to his creditor to the prejudice of a seizure or an attachment, is not valid with regard to the creditors seizing or attaching ; those may, according to their claims, oblige him to pay anew, and he has, in that case alone, recourse against the creditor." This provision most clearly prohibited the garnishees from settling with, and paying the Bank, and it from receiving ; and we do not think they can protect themselves, in consequence of an adjustment, partial payment, and renewal of the debt, by one of the parties to the drafts, made, if not at their instigation, at least with their consent. It would be very easy for garnishees in almost any case, to escape responsibility, if it were permitted to them, or to their co-debtors, to discharge themselves by paying or transacting with their creditor after attachment. We have, at different times, said that a garnishee is a kind of stake-holder ; that he has no right to enter into the contest between the plaintiff and defendant in the suit, nor to change his position towards either, after a notification of the attachment. He is to render a true and faithful account, and

can contest only in relation to what he is owing, contradictorily with both parties, and pay to the one entitled to receive the balance found due. 18 La. 405. *Frazier and another, &-c.* v. *Willcox and another*, 4 Robinson, 517.

The counsel for the garnishees contends, that article 2145 of the Civil Code does not apply to this case, as it was not the garnishees who made the payment and settlement with the Bank, whereby they were discharged, but their co-debtors not cited as garnishees, who, he says, had a right to release themselves from responsibility by any legal means. We have before said, that if this had been done without any notice of the attachment, and not with the purpose of defeating it, we should hesitate before we would condemn a garnishee ; but the evidence authorizes us to say, that the reverse is the fact in the case before us. The courts of this State, it is true, could not have interfered to prevent the arrangement made; but we do not doubt those in Mississippi would, if it had been shown by the garnishees, that the proposed settlement would prove prejudicial to their interests, and involve them in difficulty.

The garnishees further contend, that if the plaintiffs are entitled to recover, they have a right to pay them in the notes of the Union Bank, as they would have had a right to pay the Bank in that kind of currency ; or, in other words, that the plaintiffs, in discharge of their judgment, must receive in payment the same kind of notes as those they sue on. The Judge below seems to have been of this opinion also, although the effect would be, to leave the plaintiffs in the same position they were in when they commenced this suit. Had the garnishees shown, that previous to the attachment, they had notes of the Bank to a sufficient amount to pay their debt, we are not to be understood as deciding, that they would not be entitled to their plea of compensation ; but no such thing is shown. The garnishees have not exhibited, nor have they proved, that they, or their co-debtors, had one of the notes of the Bank, for any such purpose, which has not been placed to their credit. But if the notes were obtained subsequent to the attachment, we do not well see how, under article 2212 of the Civil Code, they could be pleaded in compensation. But all this is not very material to the present case, as the garnishees have

not shown any intention to avail themselves of a faculty they pos-
sessed ; and we cannot retain to them the right, when they have
not shown their ability to discharge their obligation in the manner
they propose.   It is possible, that a plea of compensation might
have been sustained, if the garnishees had had demands against
the plaintiffs, or Clifton, who is admitted to be interested for a
certain portion ; but that, we shall not decide at present.

After a particular examination of the whole case, we cannot see
any reason for discharging the garnishees from the payment of
the debt, for which they were bound to the Bank, as the accep-
tors of the drafts of the two Densons.   They complain, that they
were deceived by the officers of the Bank, in the latter part of the
year 1841, as to their liability for these debts ; but it appears to
us, that the garnishees deceived themselves, in relation to that
matter.   The evidence is, that the Cashier of the Bank called on
Hill for various sums alleged to be owing by his firm, and, among
them, for the two drafts in question.   He stated, that the drafts
had been paid, and so marked them with his pencil, on the
margin of his account, and specified the manner of payment,
which turned out not to be so, although it is very probable he
believed so at the time, and the Cashier also.   But the fact is,
that the notes were in the hands of the Bank's attorney for collec-
tion, and, consequently, could not be found in the portfolio when
a search was made for them.

The plaintiffs further claim, that the garnishees shall be con-
demned to pay them the amount of a draft for $1100, drawn by
Hunn and others, accepted by the said garnishees, discounted by
the Bank, protested for non-payment at maturity, and remaining
unpaid at the date of the attachment.   There is no doubt as to the
correctness of the foregoing facts ; but the garnishees allege, that
they are not bound for this sum, as the attachment was of special
debts in their hands, and not generally of all they might be owing,
or possess, belonging to the Bank, wherefore they paid the
amount of Hunn's draft to the Bank, after the attachment.   The
plaintiffs, in their petition, allege, that " there is money due" from
the garnishees to the Bank, being the amount of the two drafts
of the Densons, and one of Wade, Brice, and Noble, which they
describe with sufficient certainty, and represent as being unpaid

and protested. They aver, that these drafts are the property of the Bank, and pray, that they may be attached and sequestered for the payment of their debt. They then pray, that the garnishees may be made parties, and be ordered to answer whether or not they accepted the *said drafts*, and if either of them has been paid; *also, that they attach to their answer a true account of all their dealings with, and payments to, the said Bank ;* and finally, they pray, that the indebtedness of said garnishees may be paid over. The writ of attachment, or citation, served on the garnishees, commands them to appear, and declare on oath, what property they had belonging to the Bank, in what sum they are indebted, and to answer the interrogatories. The answer of the garnishees is very brief. They say, that they " accepted the drafts described" in the petition, all of which have been paid by the drawers ; and they do not say whether or not they are indebted to the Bank, but merely, that they have had no transactions with it for many years, and then only in the sale of cotton, and the transmission of the proceeds. No statement, or account, is filed.

It cannot be expected, that a plaintiff can describe in his petition, with very great accuracy, the debts, or form of obligation, between his debtor and the garnishee in an attachment suit. He has not, in many cases, the necessary information or evidence, to enable him to do so. Much certainty in the allegations is not, therefore, to be exacted; but a garnishee, who knows what he owes, or what property he possesses, can answer fully. It appears to us, that the allegations of indebtedness by the garnishees are sufficient, and the attachment general. The garnishees, therefore, had no right to pay to the Bank the amount of the draft, drawn by Hunn and others, after they had notice of the attachment. The counsel has endeavored to show, that this draft was paid previous to the citation. His clients have not produced it, with the receipt specifying the date. The testimony of the officers of the Bank fixes the period as the 25th of January, 1842, and we see nothing in the deposition of the witness, Hardeman, to destroy their testimony. He is not very particular as to the date, when he was in the Bank, and heard the conversation between the Cashier and Hill, except as to its being in the latter part of the

year 1841.   Then Hill said to the Cashier, as he, (the Cashier,) testifies, that he was not sure whether Hunn's draft had been paid or not, but that, if it were not, he would pay it.   No other evidence of the time of payment is given, other than as above stated. From all the testimony, it is certain, that no payment was made at the time when Hill and the Cashier were examining the account of the garnishees with the Bank ; and none is shown at any other time than that stated.   If there was any, it could have been shown, and the party, on whom the burden of proof rested, has failed to make it.

The judgment of the Commercial Court is, therefore, annulled and reversed ; and we do order, adjudge, and decree, that the plaintiffs, Horace Bean & Co., do recover of the defendant, the Union Bank of Mississippi, the sum of eight thousand three hundred and fifty dollars, with interest, at the rate of five per cent, on the sum of four thousand three hundred and fifty dollars, from the 1st day of April, 1839, until the 1st day of April, 1840, and interest at the like rate, on the sum of four thousand dollars, from the 1st day of May, 1839, until the 1st day of May, 1840 ; also, interest by way of damages, at the rate of fifteen per centum, per annum, until paid, on the following sums, part of the foregoing, to wit : on the sum of twelve hundred dollars, from the 2d day of April, 1840 ; on the sum of two hundred and fifty dollars, from the 3d day of the same month and year ; on the sum of five hundred dollars, from the 8th day of the same month and year ;  on the sum of fifty dollars, from the 16th day of the same month and year ; on the like sum of fifty dollars, from the 20th day of the same month and year ; on the sum of one hundred dollars, from the 21st day of the same month and year ;  on the sum of fifty dollars, from the 22d day of the same month and year ;  on the sum of one hundred and fifty dollars, from the 25th day of the same month and year ;  and on the sum of fifteen hundred dollars, from the 29th day of the same month and year.   Likewise, on the sum of five hundred dollars, from the 3d day of May, 1840 ; on the sum of five hundred dollars, from the 4th day of the same month and year ; on the sum of fifteen hundred dollars, from the 5th day of the same month and year ;  on the sum of five hundred dollars, from the 7th day of the same month and year ; on the sum of five

hundred dollars, from the 8th day of the same month and year ; on the sum of five hundred dollars, from the 9th day of the same month and year ; and on the sum of five hundred dollars, from the 23d day of the same month and year; with costs in both courts : which judgment aforesaid shall be satisfied out of the amount which the garnishees, N. & J. Dick & Co., are hereby found to be owing to the said Union Bank of Mississippi, to wit, the sum of nine thousand three hundred and seventeen dollars and seventy-five cents, with interest thereon, at the rate of five per centum, per annum, on the sum of eight thousand two hundred and seventeen dollars and seventy-five cents, from the 16th day of June, 1840, until paid, and' the like rate of interest on the sum of eleven hundred dollars, part thereof, from the 1st day of February, in the same year, until paid, or so much thereof as shall be necessary to satisfy the demand of the plaintiffs ; for which last aforesaid sum and interest, the plaintiffs have judgment against the said garnishees, with all the costs in both courts that relate to the said garnishment.*

*Elmore, W. W. King*, and *Eustis*, for the appellants.

*G. Strawbridge*, for the defendants.

*L. Peirce*, for the garnishees.

---

* *L. Peirce*, for the garnishees, for a re-hearing. The court relies, in the opinion delivered by it, on art. 2145 of the Civil Code, and states, that " this provision clearly prohibits the garnishees from settling with, and paying the Bank, and *it* from receiving." Now, the indebtedness of the Densons, was not, and could not be attached, and they were co-debtors, and the Bank was the holder of the obligations, on which they were bound with the Dicks ; and, if one provision of *our municipal law*, is to be considered as binding on, and applying to, a citizen or corporation of a *foreign* state, by parity of reasoning, every other provision of the *same law*, *in pari materia*, must be so likewise. Art. 2145, is found under the title of " Conventional Obligations," and the division " of payment or performance in general ;" and, under the same division we find art. 2130, which says, that " an obligation may be discharged by any person concerned in it, such as a co-obligee, or a security." Now, the Densons were under no incapacity to pay, and under this art. they had a right to do so. Let us suppose A. and B. are jointly and severally bound to C., in a written obligation, and that they all reside in this state, and that D., having judgment and execution against C., levies on A., for the amount of his indebtedness to C.—can there be a doubt that B., could not pay to C., he having the evidence

of the debt in his possession, under art. 2130 ? and if he could, is it not the case of the Densons ?   Again by art. 2141, No. 1, of the same code, payment made to the holder of the obligation, if payable to bearer, or endorsed in blank, is a good payment, although the person receiving it may act with *mala fides*. Of what value is a *private* prohibition, not to pay a debt due a third person ? If A. has judgment and execution against B., and informs C., who is A.'s debtor, of the facts, and that he intends to levy on him, and warns him not to pay, does this private communication, amount to a levy and a legal prohibition, to do that which at law and in conscience he is bound to do, unless the *law* itself steps in and makes the prohibition ?   This court has often said, that to bring a party into court, and bind him by the proceedings, actual citation, or the voluntary joining of issue upon the merits, must take place, and that, although knowledge of the whole matter may be brought home to the party, he is not bound without these requisites.   2 La. 171.   4 La. 156.   5 Mart. N. S. 429 : and the law is still stricter in attachment suits.   8 Mart. N. S. 161. Consequently, no constructive, or actual notice to the Densons of the attachment, could subject them to the jurisdiction of the court ; nor was the Bank in any manner bound by the attachment, beyond the amount actually attached, as due by the Dicks ; for, as to third parties not before the court, the attachment, and all proceedings in the suit, were *inter alios acta*, and nothing but actual attachment of property of the Densons, citation, or voluntary joining of issue by them, in the cause, could in any manner affect them, or prevent them or the Bank, from transacting as to any debt or business between them.   It was not enough that they were informed, that certain of their co-debtors were sued in another state, where they were bound *in law*, and in conscience, to discharge their just debt to a creditor holding and possessing the *sole evidence* of it.   This is, surely, a sufficient answer to the reasoning of the court, on the *knowledge* of the attachment by the Densons, and must necessarily induce the court, to give that "*great weight*," to the argument, which they say they would, had there been no such notice.   They will " hesitate before they condemn the garnishees," now that we show, that this notice was, by our own law and jurisprudence, unavailing.   The court acknowledges, that the tribunals of this State, " could not have interfered to prevent the arrangement."   But they say, they " do not doubt, those in Mississippi would, if it had been shown by the garnishees, that the proposed settlement would prove prejudicial to their interests, and involve them in difficulty."   With deference to the court, I doubt the legal right of the garnishees to interfere between the Bank and its just debtors, the Densons, in the settlement of their accounts, simply because the garnishees happen to be bound with them, and more especially, when that settlement was, obviously, to the advantage of the garnishees ; for we cannot perceive, even should we admit the right to interfere, that any court in *Mississippi*, would say, that the payment by the Densons, of the negotiable instrument, on which the garnishees were liable with them to the holders, and their extinguishment, could operate an injury to the garnishees.   That a *common law* court would give this *supposed* relief, and entertain this interference,

it would be absurd to suppose.  In an application to chancery, the question would be, where is the equity ?  Is it equitable to prevent a debtor from paying, and a creditor from receiving, a just debt, when the latter holds the evidence of it in his hand, simply because there is another debtor, who is liable, and because he is sued by a creditor of his creditor, in a foreign tribunal, and by a process unknown to the Mississippi law ?  Surely not.  Had the Densons no interest in discharging the debt ?  I think they had.  It may be, that in the Bank they found a lenient creditor, and that they may have made with it, an advantageous settlement ; whereas, had they been obliged to make the settlement with the Dicks, on account of payment by them, they probably could not have settled so advantageously.  It may be, that the Densons had an offset against the Bank ; and, in short, there may be innumerable reasons adduced to show, that a direct settlement by them with the Bank, was most to their advantage ; and it must be presumed, till the contrary is shown, that they, (the Densons,) did settle because it was most to their advantage.  The equity to sustain a bill in chancery, must not be one-sided.  The court will not enjoin an act, perfectly legal and equitable, about to be performed in pursuance and fulfilment of a duty, simply because of the interference of a third person, whom the very act goes to discharge from liability.  Let us suppose, that pending the suit here, the Bank had prosecuted its suit against the Densons in Mississippi, to judgment, and had levied in execution ; could the Dicks have enjoined it upon the plea that they were sued by attachment, by a foreign creditor of the Bank, on account of their liability on the drafts, in a foreign court ?  Would not the reply be, that the process of a foreign tribunal, and the action before it, could be no bar to the suit of the Bank against its just debtor ; that the Bank held the evidence of the debt, and had full right to prosecute it to payment ; that the debtor was no party to the suit here, and that the judgment could not affect him, nor interfere between him and his creditor, the Bank, or in any manner change their relative positions, previous to its execution.  If, then, the Bank could have compelled the Densons to pay in Mississippi, by suit, and thus discharge the debt, they had clearly the right to receive, and he to pay ; or compromise, or transact for its extinguishment, without suit.

The evil that will result from this judgment is, that a judgment here will protect the garnishees here—but they being accommodation acceptors of the bills, which have been, in the mean while, paid by the real debtors, the Densons, to the Mississippi Union Bank, the garnishees cannot *recover back* from the Densons.

1st.  Because the Densons had a *right* to pay the Mississippi Union Bank, although there was pending an attachment against the Mississippi Bank here.  This attachment did not affect their right to pay to the Bank, nor the Bank's to receive, because the Densons were not made *parties*, and were sued by the Bank, in their own State, *the Bank holding the bills*.  That they knew, by private information, that there was an attachment against the

Bank, and that the indebtedness of the *Dicks* was attached, was nothing to them, and did not operate as an *injunction* not to arrange with, or pay the Bank. The notice must be a legal, and binding notice. If the court of Louisiana had cited them, and sent their citation to Mississippi, would it have limited or confined them in their action?

And now, that there is a judgment here against the Bank of Mississippi, is that binding upon the Densons, to make them pay the money again?

Under what pretexts will the Dicks be enabled to get their money back from any of the parties? Will the being obliged to pay the judgment here against the Mississippi Bank, be any plea? No: because, as cannot be too often said, the other parties on the bills cannot be prejudiced by what is done in this State.

The judgment cannot be used, for it is not a judgment in another State, against the Mississippi Bank, (5 Wend. 149;) and this court, while condemning us to pay, leaves us without recourse against the Bank or the Densons.

It may be, that the courts of Mississippi, will have the same opinion as this court, and think the garnishees justly condemned, which will leave us ordinary creditors of a broken corporation, but it will be all that can, by possibility, be obtained. Was the attachment law of Louisiana made with the intent to protect our own citizens? If so, the decision is, in this case, subversive of the intention; for every acceptance for accommodation, or otherwise, for every endoisement of bills for our customers in Tennessee, Mississippi, or Alabama, &c., we shall be liable here to attachments from the creditors abroad of every supposed holder; and from that moment, no matter who has paid the bills in the other States, and though they are sent to us to file in court to show, that they are extinguished, the Louisiana merchant must pay the creditor, and look for his remedy to suits in foreign States, that are as at full liberty to construe the just application of your attachment laws, as you yourselves are; and may well decide, for the protection of *their citizens*, that our courts have no jurisdiction, where the indebtedness arises from a voucher not in the hands, or within the control of the plaintiff; or that, should payment of such voucher by another party, be before judgment, and it be surrendered, that the plaintiff could at the time of judgment. have no more right against the *garnishee*, than he had against the absent defendant. It will be admitted, that should Horace Bean & Co., or any other person wish to use this judgment in the State of Mississippi, that the Mississippi Bank can plead, that no process was ever served upon them in the suit in which judgment was rendered, and that they never appeared thereto in person, or by attorney, and that this will bar a recovery. If then, this is no judgment against them, for the reasons stated, suppose the garnishees here instituted an ordinary suit against the Bank in Mississippi, to return the payment to the Densons by them made while there was a suit pending in another State, will not the answer be, there was no suit pending; it was a proceeding *in rem*, without even

jurisdiction over the thing attempted to be reached, and as we were not in law *parties*, we cannot be made to return; and you are but ordinary creditors of ours holding our bank notes. Further remedy cannot be obtained. Can this be gainsaid? and are we to be left thus defenceless by our own courts?

The garnishees are considered by the court as personally parties to a proceeding, to which really there are no parties, the jurisdiction being founded exclusively on the existence of a thing within the control of the court. The thing, in this instance, is the obligation of the garnishees to pay the foreign debtor his acceptance, if no body else pay it previous to the bill's being presented to him. This is all that is attached. It is all that is prayed to be attached. Any improper or ignorant printed *formula* used by clerks—any general words used by the Sheriff's writs not specified by law, are nullities, and do not increase the garnishee's liability.

The court has refused to regard what has been done in another State, to free the garnishees from this collateral indebtedness, between parties, *none of them parties to any suit in* this State, and makes them pay an extinguished obligation to a person, neither owner nor holder, and which having been rightfully extinguished can never be recovered by them.

Finally, the court is prayed to reserve to the garnishees, the right to set off the notes of the Mississippi Bank, should execution issue against them. They have not tendered them; they do not plead compensation; nor do they allege, that they had these notes; but merely refer to the power, it is believed they had, to set off the judgment, in notes similar to those that are the cause of judgment against them. They wish to have an opportunity of testing the two principles as applicable to this case: the first, that the plaintiff in attachment cannot alter the position of the garnishees towards the defendants, and that all the rights they may have, are fully secured to them, one of which is, by the laws of Mississppi, as now by the law of this State, at all times to pay in the notes of the Bank; and the next, that this is a right that can be exercised after judgment, on foreign attachment, and is one that cannot be taken away by an attachment of their debt without possession of the bill.

*Re-hearing refused.*