No. 6558.

CHARLES MADUEL, EXECUTOR, ET AL. VS. P. H. MOUSSEAUX ET AL. UNION INSURANCE COMPANY, GARNISHEES.

It is only property in the possession of the garnishee, or a debt *absolutely* due by him, though not exigible, at the moment the interrogatories are served on him, that can be seized under a garnishment process. A prospective, contingent debt can not be reached by such process.

APPEAL from the Fifth District Court, parish of Orleans. *Cullom*, J.

*George L. Bright*, for plaintiffs and appellants.

*M. M. Cohen* and *Kennedy & Chiapella*, for defendants.

The opinion of the court was delivered by

MANNING, C. J. The Union Insurance Company of New Orleans, was garnished by plaintiffs and answered the interrogatories. The plaintiffs con-

sidered the answers evasive, and on the second of November, 1875, took a rule on the company to show cause why judgment should not be rendered against it upon the ground that it had failed, neglected, and refused to answer the interrogatories propounded to it.    Four days afterward, Achille Chiapella, one of the judgment debtors of plaintiffs, took a rule on them to show cause why the seizure of his wages as president of the company should not be annulled and set aside—the garnishee having answered that he was its president with a stipulated monthly recompense.

The first rule was tried, an appeal taken from the judgment of the lower court, and final judgment rendered in this court in May, 1876. That judgment was, that the interrogatories were sufficiently answered. The second rule was discontinued by Chiapella the following month.

On the thirtieth of May, 1876, plaintiffs' counsel moved to set for trial Chiapella's rule, and that inasmuch as by the answers of the garnishee it was indebted and obligated to Achille Chiapella for salary from July 1, 1875, to May 10, 1876, at four hundred and sixty dollars per month, it was ordered that Chiapella and the insurance· company show cause why judgment should not be rendered against them for $4753 33, the salary due for the time above mentioned, with interest.

The insurance company to this demand pleaded *res judicata.*

The company, answering the second interrogatory of plaintiffs, had said: "The Union Insurance Company of New Orleans does not at present, nor did it at the time of seizure and service of interrogatories, owe any money to the said A. Chiapella.   This respondent admits that the said Chiapella is president of the Union Insurance Company of New Orleans and receives from the said company monthly wages amounting to $460 41 as recompense for his personal services rendered to the said company in his aforesaid capacity of president.   But this respondent avers that under the law the said sums monthly due to the said Chiapella as wages are not liable to seizure, and respondent avers that it has no funds or moneys in its possession belonging to or due to the said Chiapella."

The law in force at the time this answer was made provided that the sheriff could not seize "wages nor recompense for personal services." Acts 1874, p. 53.   By an amendment of April 4, 1876, the words "laborers' wages" were substituted to that sentence.   Acts 1876, p. 124.   So the recompense for personal services was not exempted from seizure on the thirtieth of May, 1876, the date of fixing for trial the present issue.

The counsel of the garnishee has rested his defense upon the plea or exception of the thing adjudged, maintaining that the issue decided by this court on the rule for judgment, because of insufficiency and evasiveness of the answers, was in fact and in law an adjudication that the gar-

nishee had no money or effects belonging to the defendants, or either of them, and since the object of the present rule is to reach what is alleged to be due defendant by garnishee, the identity of object in the two proceedings is established. He also insists that the three other features requisite to support the plea of *res judicata* are present, viz.: identity of parties, of capacity, and of cause of action, and his elaborate brief has conveniently collated for us all the law upon that subject.

The counsel for the plaintiffs in turn forcibly argues that the claim for the salary was not before the court in the pleadings in the former rule, and that the sole question then considered was whether the garnishee's answers were sufficient and unevasive, or in other words whether the garnishee had or had not failed, neglected, and refused to answer. The exception of *res adjudicata* must be determined, he properly adds, upon the issue raised in the pleadings and not by the points made in argument.

The distinction is subtle. The phraseology of the opinion of this court delivered when deciding the former rule favors the view of plaintiffs. The substantial matter then decided favors that of garnishee. We are relieved from the necessity of applying the law relative to the plea of the thing adjudged to the facts of this litigation, because the pleadings and evidence develop an equally fatal and more patent objection to the plaintiffs' recovery against the garnishee.

The seizure was made by service of the interrogatories on the insurance company on the sixteenth of July, 1875. The garnishee answered on the twenty-seventh of the same month that it did not then, nor at the time of seizure, owe any money to Chiapella, and then added that he received from the company monthly wages as president. He had been paid what was due him as recompense for these services before the seizure. The plaintiffs never made any other seizure. None could have been made then. The existing law forbade the seizure of this recompense at the date of answering the interrogatories, and continued to forbid it until April 4, 1876. After its repeal, the plaintiffs, on the thirtieth of May, without a new seizure or other proceedings, move to set for trial the rule taken by Chiapella the previous November, to show cause why the seizure of his salary under the garnishment of July, 1875, should not be dismissed, and that is the motion we are now considering. Chiapella had voluntarily discontinued his rule on the third of June, immediately after service of plaintiffs' motion was made on him, and does not answer this motion nor in any manner object to the hearing, but the insurance company interpose the plea of *res judicata*.

A debt must exist, although the period of its payment may not have arrived, in order to make it subject to seizure in the hands of a garnishee. There must be an existing absolute liability to pay at a future

time—*debitum in presenti, solvendum in futuro*—and not a prospective, contingent, and conditional liability.

The true test is, what could the debtor recover of the garnishee at the date of the service? On the sixteenth of July the company owed Chiapella nothing. There was a continuing contract, liable to be determined at any moment by various causes, but neither that contract nor the recompense it provided were liable to seizure until nine months after the only seizure was made, and this process must stand or fall according to the state of facts existing at the time of service. Todd vs. Shouse, 14 An. 426; Bean vs. Miss. Union Bank, 5 Rob. 333; Rightor vs. Phelps, 16 An. 105.

In Coleman vs. Fennimore, 16 An. 253, it is held that answers acknowledging no present indebtedness to defendant, nor any future indebtedness except contingent upon an uncertain event, will not bind garnishees. But the plaintiffs' counsel maintain that the contract, admitted to exist by the garnishee's answers, for the payment of a monthly recompense for personal services, was seized by his process of the sixteenth of July, and that the repeal of the law exempting it in the ensuing April put that salary in the condition it would have been in if no such law had ever existed, and consequently the seizure was complete. It is not contested that the salary had been paid up to the time of service, but it is contended that the salary which should thereafter become due on a terminable contract, not then liable to seizure, was by the seizure of July subjected to plaintiffs' judgment. We think differently.

In Marchand vs. Bell, 21 An. 33, the city of New Orleans was garnisheed and answered that if it was ever indebted to Bell by reason of any contract between them, any amount that might have been due him was forfeited on account of his failure to fulfill his part of it, and on the fifth of September, 1866, the city supplemented its answer by averring that a compromise had been made with Bell under which he was to receive five thousand dollars. Prior to plaintiff's suit, Mackenzie had served garnishment process on the city on the eleventh of May, 1866. Held—that Mackenzie's right was ascertained the moment the city admitted its indebtedness to Bell, and his seizure had priority over Bell's. Here was an indebtedness existing at the moment of Mackenzie's seizure, the amount of which was not ascertained until afterward, but when ascertained reverted back to the moment of seizure and became liable to his judgment. In the case before us there was no existing debt, but merely one that might or would exist provided certain services were rendered, and there was no seizure of any portion of the indebtedness after the rendition of the services had changed the inchoate right of Chiapella into a substantial cause of action.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court is affirmed with costs.