The question in this case is whether the money due to a tax assessor for salary and expense allowance is subject to seizure in satisfaction of his personal debts by garnishment proceedings against the parish treasurer.
The defendant, Dubroca, is the tax assessor for the parish of St. Charles. The plaintiff, Fischer, has a judgment against Dubroca, personally, for $600, and interest at 8 per *Page 294 
cent. per annum from the 31st of December, 1923, and 10 per cent. attorney's fee. A writ of fieri facias was issued, and, on the 29th of November, 1924, garnishment process was served upon the parish treasurer, the allegation of the plaintiff being that the treasurer had money belonging to the defendant, Dubroca, in the "assessor's salary fund." The parish treasurer answered the interrogatories on the 6th of December, 1924, saying that Dubroca's salary as tax assessor for the parish was $2,000 per annum, and that his expense allowance was also $2,000 per annum, all payable out of the assessor's salary fund, derived from pro rata contributions by the several taxing bodies, and that the police jury had paid to the assessor one-twelfth of his annual salary and expense allowance at the end of each month, and had already paid eleven-twelfths of the salary and expense allowance for the year 1924, including the one-twelfth that was paid for November, before the interrogatories were served upon the parish treasurer. He denied, therefore, that there was then any money due to the assessor either for salary or for expenses of his office, and pleaded, further, that any money that might be due to the assessor for his salary or expense allowance, as a public officer, was exempt from seizure, and could not be made liable for his personal debts by garnishment proceedings against the parish treasurer. On the 31st of December, 1924, the plaintiff had garnishment proceedings served again on the parish treasurer, and, on the 9th of January, 1925, he answered, admitting that there was due to Dubroca from the assessor's salary fund $333.33 for the month of December; $166.66 being the twelfth of his annual salary, and $166.66 being the twelfth of the annual expense allowance. On the 31st of January, 1925, the plaintiff had garnishment proceedings served again on the parish treasurer, and, on the 23d of February, he answered, admitting *Page 295 
that there was due the defendant the further sum of $333.33 for the month of January; $166.66 being the twelfth of his annual salary, and $166.66 being the twelfth of the annual expense allowance. On the 26th of February the plaintiff filed a petition averring that the parish treasurer should not have paid to the assessor before the end of November, 1924, the proportion of salary and expenses due for that month; and the judge issued a rule ordering the parish treasurer to show cause why he should not replace into the assessor's salary fund and hold subject to the further orders of the court the $333.33 that had been paid to the assessor for his salary and expenses for November, 1924, and to show cause why the police jury should not be held responsible to the plaintiff for the $333.33 paid to the defendant for November, 1924. On the same day, that is, on the 26th of February, 1925, the plaintiff, Fischer, obtained an ex parte order of court commanding the parish treasurer to pay over to the sheriff, to be applied to the satisfaction of the writ of fieri facias, the $666.66 due to the defendant, assessor, for his salary and expense allowance for December, 1924, and January, 1925. On the same day, that is, on the 26th of February, 1925, the plaintiff obtained an alias writ of fieri facias, and on the last day of February had interrogatories served again on the parish treasurer, and on the last day of March had interrogatories served again on the parish treasurer as garnishee. He answered on the 5th of May, admitting that there was then $81 in the assessor's salary fund. On the 1st of June the parish treasurer was served with the sixth set of interrogatories addressed to him as garnishee, and on the 8th of June he answered that there was then no balance in the assessor's salary fund.
Meanwhile the defendant, Dubroca, pleading that his salary as a public officer and his allowance for the expenses of his office were exempt from seizure, and could not be made *Page 296 
liable for his personal debt by garnishment proceedings against the parish treasurer, obtained a rule on the plaintiff and the sheriff to show cause why the ex parte order of court dated the 26th of February, ordering the parish treasurer to pay over the $666.66 to the sheriff, should not be rescinded, and why the garnishment proceedings should not be dismissed and the funds released. The rule was answered by the plaintiff and the sheriff, and, after trial, was made absolute. Accordingly, the court gave judgment in favor of the defendant, declaring his salary and expense allowance exempt from seizure, ordering the sheriff to return the $666.66 to the parish treasurer, to be replaced in the assessor's salary fund, and dismissing the garnishment proceedings. The plaintiff and the sheriff took a suspensive appeal to the Court of Appeal for the parish of Orleans, and that court reversed the judgment appealed from, and reinstated the ex parte order of the district court, dated the 26th day of February, 1925, commanding the parish treasurer to pay over to the sheriff the $666.66 for the two months' salary and expense allowance, to be applied to the satisfaction of the writ of fieri facias. The case is before us on a writ of review.
The salary and expense allowance of the tax assessor for each parish in the state (except the parish of Orleans) is fixed by statute; the latest such statute being the Act 251 of 1924, p. 642. The salary of the assessor for St. Charles parish is fixed at $2,000 per annum, and his allowance per annum "for clerical and other expenses * * * in the performance of all the duties required of them by law," is fixed at $2,000, "or so much thereof as may be necessary." Section 2. According to the sixth section of the act, the salary and expense allowance are payable when the assessment rolls for the current year are completed, but the police jury is allowed to advance to the assessor at the end *Page 297 
of each month a twelfth of his annual salary and expense allowance. The fund from which the salary and expense allowance are paid is called the "assessor's salary fund," and is derived from pro rata contributions from the tax collections for the state, parish, school districts, levee district, drainage districts, and other taxing districts, all in proportion to the taxes collected for each of them. It is stipulated in the second section of the statute that, if the expense allowance for any tax assessor shall exceed the amount necessary "in the efficient performance of his duties," the excess shall not be drawn or otherwise expended by him, and that each tax assessor shall submit to the supervisor of public accounts, along with his compensation statement, a detailed and itemized statement of all of his expenditures for clerical and other expenses of his office, together with the canceled checks, receipts, and vouchers, evidencing each payment, to the satisfaction of the supervisor of public accounts.
These pertinent provisions of the statute, as we have pointed out, make it plain that the expense allowance for a tax assessor is not to be used for any other purpose than to defray the actual and necessary expenses incurred in and for the performance of his official duties. No part of the expense allowance belongs to the assessor personally. It would be an act of embezzlement on his part to appropriate any part of his expense allowance to his personal use or benefit. For that reason, our judgment is that that part of the assessor's salary fund that is allowed by the statute for the expenses of the assessor's office cannot be diverted to the payment of a personal debt of the assessor by garnishment proceedings against the parish treasurer. The judgment of the Court of Appeal to the contrary is founded upon the idea that, inasmuch as no one else claims any part of this expense allowance, it should be presumed that the assessor paid the expenses of his office *Page 298 
out of his personal funds, and is entitled to reimbursement personally out of the expense allowance for each month. The Court of Appeal expressed the opinion also that, if the assessor did not pay the current expenses of his office with his personal funds, he had no right to champion vicariously the rights of those with whom he had incurred debts for the expenses of his office. We do not subscribe to either of those propositions. It is the duty of every public official to see that the debts incurred for the expenses of his office are paid out of the funds provided by law for that purpose. And where, as in this case, the law contemplates that an officer shall pay the expenses of his office with his personal funds, and provides a special fund to be used only for reimbursing him, that fund cannot be diverted, by garnishment proceedings against the custodian of the fund, to the payment of a personal obligation of the officer, incurred for a purpose other than expenses of his office. There is no statute that we know of exempting from seizure the reimbursement due to a public officer for official expenses paid by him, and there is no necessity for such a statute. The exemption rests upon the fundamental proposition that a public fund that is dedicated by law to a special purpose cannot be diverted to any other purpose except by the same authority that dedicated it.
As to the salary of the assessor, the judgment of the Court of Appeal is founded upon the supposition that, by a statute enacted in 1918, Act 184, p. 347, the Legislature repealed the only law that exempted from seizure the salaries of public officers. The act of 1918 is an amendment and re-enactment of section 1 of Act79 of 1876, which was an amendment of article 644 of the Code of Practice. The article of the Code of Practice of 1825 merely forbade the seizure of a debtor's household linen, beds, wearing apparel, military accouterments, or tools or instruments *Page 299 
used in his trade or profession. The article, originally, did not exempt from seizure any incorporeal rights or credits belonging to the debtor, but exempted only the physical properties mentioned. In the revision of the Code of Practice, however, in 1870, article 644 was amended by adding, in conformity with the Act 128 of 1842, p. 380, "nor shall he [the sheriff] in any case seize the rights of personal servitude, of use and habitation, of usufruct to the estate of a minor child, or the income of dotal property." Even as revised, article 644 of the Code of Practice did not exempt officers' salaries from seizure or from liability for their personal debts. That was provided for in article 647, viz.:
 "Art. 647. But if the debtor has neither movable, nor immovable property, the sheriff may seize the rights and credits which belong to him, and all sums of money which may be due to him, in whatsoever right, unless it be for alimony or salaries of office."
Besides that express exemption in article 647 of the Code of Practice, there is article 1992 of the Civil Code, which goes further, and declares that a contract of employment between the public, as employer, and a public officer, as employee, is so strictly personal that the officer's salary "cannot be made liable to the payment of debts," and that a contract respecting an officer's salary is not subject to the provisions of that section of the Code, under the title "Of the Effect of Obligations." The article reads:
 "There are also rights which are merely personal, that cannot be made liable to the payment of debts, and therefore no contract respecting them comes within the provision of this section; these are the rights of personal servitude, of use and habitation, of usufruct of the estate of a minor child, to the income of dotal property, to money due for the salary of an office, or wages, or recompense for personal services."
In translating from the French text of the corresponding article (which was article 1987) of the Civil Code of 1825, the word *Page 300 
"public" was omitted accidentally from the expression "salaries d'emploi public." This omission was noticed by the court in Vance v. Lafferanderie, 4 Rob. 340, and again in Conrey v. Copland, 4 La. Ann. 307, where it was held that the exemption applied only to salaries of public officers; the ruling in the first case being that the exemption did not apply to the salary of an auditor appointed by a probate court to audit the accounts of a succession, and the ruling in the second case being that the exemption did not apply to a liquidating commissioner of a bank. It was held also that, so far as article 1987 (now 1992) of the Civil Code purported to exempt "wages or recompense for personal services," the article was restricted by article 647 of the Code of Practice to wages or recompense due for the salary of an officer, because, by the terms of a statute of 1824 (Bullard 
Curry's Digest, 150, § 16), in case of a conflict between the provisions of the Code of Practice and those of the Civil Code, the provisions of the former must prevail.
In the opinion rendered by the Court of Appeal in this case it is not contended that article 1992 of the Civil Code and article 647 of the Code of Practice, both exempting public officers' salaries from seizure or liability for their personal debts, were repealed by the Act 184 of 1918. That act is not any more in conflict with article 1992 of the Civil Code or 647 of the Code of Practice than the original article 644 of the Code of Practice was; because neither the original article 644 of the Code of Practice nor the Act 184 of 1918, amending that article of the Code of Practice, makes mention of the salaries of public officers. The opinion of the Court of Appeal was that article 1992 of the Civil Code and article 647 of the Code of Practice, so far as they exempted public officers' salaries from seizure or liability for their personal debts, were repealed by the Act 79
of 1876, p. 123, amending article 644 of the Code of *Page 301 
Practice. That article, after the revision of 1870, was first amended by the Act 39 of 1872, p. 93, "so as to correspond with article one thousand nine hundred and ninety-two of the Civil Code," as the statute says. The amendment consisted mainly of the adding to the list of incorporeal rights which the sheriff was forbidden to seize "nor money due for the salary of an officer, nor wages, nor recompense for personal services," which was precisely the language of article 1992 of the Civil Code. As we have said, this court had decided, in Vance v. Lafferanderie and in Conrey v. Copland, that the exemption of wages and recompense for personal services, in article 1992 (then 1987) of the Civil Code, was not effective, except as to salaries of public officers, because of the conflict with article 647 of the Code of Practice. It is therefore probable that the amendment of article 644 of the Code of Practice, by the Act 39 of 1872, was made for the purpose of giving effect to the exemption of wages and recompense for personal services. The amendment of article 644 of the Code of Practice, by the Act 39 of 1872, could not have had any other purpose or effect, because the exemption of the salaries of officers was already provided for in article 647 of the Code of Practice.
The Act 39 of 1871-72 was amended and re-enacted by the Act 17
of 1874, p. 53, by adding sewing machines to the list of articles exempted from seizure, and by making it a misdemeanor to induce any one, by artifice or subterfuge, to sign away by contract or otherwise any of the exemptions granted by the act. As the law stood then, not only the salaries of public officers, but also all other wages and recompense for personal services, were exempt from seizure or liability for debt. By the Act 79 of 1876, p. 123, article 644 of the Code of Practice was amended by inserting, before the word "wages," the word "laborers," and by omitting "or recompense for personal services." The *Page 302 
exemption of "money due for the salary of an officer" was retained. The only effect of the act of 1876, therefore, was to abolish the exemption of "wages or recompense for personal services," except "laborers' wages" and "money due for the salary of an officer," which remained exempt from seizure or liability for debt. The provision making it a misdemeanor to induce or procure any one by artifice or subterfuge to sign away any of his exemptions by contract or otherwise was retained in the act of 1876. The act did not repeal article 647 of the Code of Practice or article 1992 of the Civil Code, but retained and continued in force the provisions of both of those articles, exempting officers' salaries from seizure. Article 1992 of the Civil Code is not exactly on the same subject-matter as the Act 79 of 1876, because the article of the Code, on the subject of conventional obligations, goes further than the act of 1876, and makes a public officer's salary not subject to transfer or hypothecation, even by his voluntary act. It would be paradoxical to say that the article of the Civil Code was repealed so far as it forbade the seizure of a public officer's salary against his will, but is left in force so far as it forbids a voluntary assignment or hypothecation of an officer's salary. The repealing clause of the act of 1876 reads as follows:
 "That all laws and parts of laws conflicting with this act or contrary to any of its provisions, and all laws on the same subject-matter, the amendment of article six hundred and forty-four of the Code of Practice [meaning the amending acts of 1872 and 1874], be and are hereby repealed." Section 3.
It is plain, therefore, that the act of 1876, amending article 644 of the Code of Practice, did not repeal article 1992 of the Civil Code or article 647 of the Code of Practice.
The Act 184 of 1918, p. 347, amended only the first section of the Act 79 of 1876; the only amendment being the omission of the words "nor money due for the salary of an *Page 303 
officer." The act of 1918 repealed only "all laws or parts of laws conflicting with or contrary to the provisions of this act." Section 2. Article 1992 of the Civil Code and article 647 of the Code of Practice, exempting public officers' salaries from seizure, are not any more in conflict with, or contrary to, the provisions of the act of 1918 — which does not mention public officers' salaries — than article 1992 of the Civil Code and article 647 of the Code of Practice were in conflict with the original article 644 of the Code of Practice, which, before it was amended by the Act 39 of 1872, did not mention public officers' salaries. There is a good and plausible reason why the Legislature, by the amending act of 1918, struck out of the act of 1876 the words "nor money due for the salary of an officer." Very likely the author of the bill feared that that language, which was put into article 644 of the Code of Practice by the amending act of 1872, had the effect of exempting from seizure the salaries of all officers — officers of private as well as of public or political corporations. The language might well have been so construed, because it was adopted as an amendment of article 644 of the Code of Practice by the act of 1872, after this court had called attention to the wrong translation, in Vance v. Lafferanderie and in Conrey v. Copland. The effect of those decisions was in a measure undone by the amendment of article 644 of the Code of Practice by the act of 1872, "so as to correspond with article one thousand nine hundred and ninety-two of the Civil Code." Therefore the purpose of the act of 1918 very likely was — for its only effect was — to correct an apparent mistake that was made by the act of 1872 and repeated in the act of 1874 and in the act of 1876, in destroying the effect of the rulings in Vance v. Lafferanderie and Conrey v. Copland, that the exemption of officers' salaries from seizure was restricted topublic officers' salaries. There is no *Page 304 
reason to believe that the act of 1918, amending only one section of the statute of 1876, which had amended article 644 of the Code of Practice, was intended also to abolish article 1992 of the Civil Code and article 647 of the Code of Practice.
When a statute amends a previous statute by merely omitting a part of its provisions, the omitted part of the previous statute is, of course, thereby repealed, but the same or similar provisions in other previous statutes are not thereby repealed, unless the new statute covers the whole subject-matter of the previous statutes, and is plainly intended to be a substitute for them.
 "When two statutes cover, in whole or in part, the same subject-matter, and are not absolutely irreconcilable, no purpose of repeal being clearly shown, the court, if possible, will give effect to both. Where, however, a later act covers the whole subject of earlier acts and embraces new provisions, and plainly shows that it was intended, not only as a substitute for the earlier acts, but to cover the whole subject then considered by the Legislature, and to prescribe the only rules in respect thereto, it operates as a repeal of all former statutes relating to such subject-matter, even if the former acts are not in all respects repugnant to the new act. But, in order to effect such repeal by implication, it must appear that the subsequent statute covered the whole subject-matter of the former one, and was intended as a substitute for it. If the later statute does not cover the entire field of the first and fails to embrace within its terms a material portion of the first, it will not repeal so much of the first as is not included within its scope, but the two will be construed together, so far as the first still stands." 36 Cyc. 1077-1079.
 "A Legislature may express its will in any form — affirmatively or negatively — that it pleases, so long as it does not transgress constitutional prohibitions. It is under no obligation to use words of express repeal. But the repeal of statutes by implication is not favored by the courts. The presumption is always against the intention to repeal where express terms are not used. To justify the presumption of an intention to repeal one statute by another, either the two statutes must be irreconcilable or the intent to effect a repeal must be otherwise clearly expressed." 36 Cyc. 1071, 1072. *Page 305 
The act of 1918, amending and re-enacting only the first section of the act of 1876, does not express the intent to effect a repeal of article 1992 of the Civil Code or article 647 of the Code of Practice. The repeal of all laws or parts of laws conflicting with, or contrary to, the provisions of the act of 1918 did not repeal article 1992 of the Civil Code or article 647 of the Code of Practice, because those articles are not conflicting with, or contrary to, or irreconcilable with, the act of 1918. They are as easily reconciled with the act of 1918 as they were with article 644 of the Code of Practice before it was amended by the act of 1872; that is to say, before article 644 of the Code of Practice exempted or made mention of officers' salaries, and the court found no irreconcilability then. In that respect, the act of 1918 merely reformed article 644 of the Code of Practice as it was originally — silent on the subject of officers' salaries.
 "A later law which is merely a re-enactment of a former does not repeal an intermediate act which has qualified or limited the first one, but such intermediate act will be deemed to remain in force, and to qualify or modify the new act in the same manner as it did the first." 1 Lewis' Sutherland on Statutory Construction (2d Ed.) p. 524, § 273.
Accordingly, the act of 1918, which is merely a re-enactment of article 644 of the Code of Practice, did not repeal article 1992
of the Civil Code or article 647 of the Code of Practice, which articles, so far as they exempted officers' salaries from seizure, had to be read in connection with article 644 of the Code of Practice; but the article of the Civil Code and article 647 of the Code of Practice are deemed to remain in force, and to qualify and modify the new act in the same manner as they did the original article 644 of the Code of Practice.
The reason why, as a matter of public policy, a public officer's salary is not subject to seizure by garnishment process against the *Page 306 
disbursing officer is that the orderly administration of public affairs should not be hampered in that way. An officer's salary is dedicated by law to the special purpose of paying for the service that he must render to the public, and, until the fund leaves the public treasury, it must not be diverted to any other purpose at the instance of any individual. The law does not exempt a public officer's salary from seizure, or shield it from liability for his debts, as a matter of grace or favor to him. The exemption prevails only so long as the salary remains in the public treasury or in the hands of the disbursing officer. Dunbar v. Dinkgrave, 10 La. Ann. 545.
In McGowan v. City of New Orleans, 118 La. 429, 43 So. 40, 8 L.R.A. (N.S.) 1120, 10 Ann. Cas. 633, it was held, without reference either to article 1992 of the Civil Code or to article 644 or 647 of the Code of Practice, or to any of the amending statutes, that an assignment of the unearned salary of a public officer was against public policy, and therefore void. The court said:
 "The reason of the rule is that, if the unearned salary of one day or one month may be assigned, that of the officer's entire term may in like manner be assigned, and thus the officer deprived of the means provided for his support, and thereby the public service be impaired. This reason operates as strongly in this state as elsewhere, and therefore the rule must be the same here as elsewhere. * * *
 "The principle upon which a salary is paid to an officer is not that of a contract, or that of the laborer being worthy of his hire; for the citizen owes his services free to the state in the proportion in which the state stands in need of them. But it is that the man must live, and that, if service is expected of him, he must be supplied with the means of livelihood. The law which prescribes the mode and manner in which the officer shall be thus supplied is one beyond the control of the officer, which is not within his power to nullify by private contract with one of his fellows."
In the decision quoted, the briefs or printed arguments on both sides of the case are published in full. Article 1992 of the Civil *Page 307 
Code, which was directly in point, was not cited, and must have been overlooked. The opinion of the court was that, without any statute on the subject, the salary of a public officer could not be assigned, hypothecated, or made liable for his personal debt, even by his free and voluntary act.
In Moll v. Sbisa, 51 La. Ann. 290, 25 So. 141, it was held that the salary of the clerk of a recorder's court was, by article 1992 of the Civil Code and article 647 of the Code of Practice, exempt from seizure. No reference was made to article 644 of the Code of Practice, or to the Act 39 of 1872, Act 17 of 1874, or Act 79 of 1876, amending the article so as to exempt from seizure the salaries of public officers. The decision was rendered in 1899. In the course of the opinion, referring to article 1992 of the Civil Code and article 647 of the Code of Practice, it was said:
 "We do not feel disposed to give to the language of the articles of the codes a restrictive signification; but, on the contrary, we think their framers intended that they should receive a liberal interpretation.
 "Consequently, we are of opinion that whether the salary of the defendant, as clerk of the sixth recorder's court, be considered as `money due for the salary of an office,' or as the `wages or recompense for personal services,' same is equally exempt from seizure."
The statement in the foregoing decision that, even if the defendant's salary were not "money due for the salary of an office," it would be exempt from seizure as "wages; nor recompense for personal services," was a mistake, because the exemption of "wages; nor recompense for personal services," which exemption was granted by the Act 39 of 1872, and retained in the Act 17 of 1874, was abolished by the Act 79 of 1876, except as to laborers' wages and officers' salaries. The mistake made in that unnecessary statement in Moll v. Sbisa was pointed out in a discussion of the subject in Bosio v. Picton, 106 La. 248,30 So. 699. In the latter case, concerning the question of exemption from seizure *Page 308 
of the salary of a clerk in the employ of a railroad company, it was observed that, in Moll v. Sbisa, the court overlooked the fact that the Act 79 of 1876 had abolished the exemption of "wages or recompense for personal services" other than laborers' wages and officers' salaries, which exemption of "wages; nor recompense for personal services" had been granted by the Act 39
of 1872 and retained in Act 17 of 1874. It had been observed already in the case of Maduel v. Mousseaux, 29 La. Ann. 229, decided in 1877, that, although the acts of 1872 and 1874 had amended article 644 of the Code of Practice so as to exempt from seizure all wages or recompense for personal services, the exemption was abolished by the amending act of 1876, except as to laborers' wages and officers' salaries.
The judgment of the Court of Appeal in this case is founded upon the decision by that court in Heyman v. Crocheron, No. 8374 of its docket, rendered in January, 1922, but not officially reported. The court's ruling in that case was that the Act 184 of 1918 had abolished the exemption from seizure of the salaries of public officers; and, admitting that a member of the fire department of a city was a public officer, the court held that his salary was subject to garnishment. There was no application to this court for writ of review. The Court of Appeal decided afterwards, however, in two cases in which the point was raised, that the salary of a public officer was not subject to seizure, and in each case we refused to grant a writ of review, assigning as our reason that the decree was correct. See Heymann v. Maloney, No. 25824 of the docket of this court, decided in February, 1923, but not officially reported, and Huntington v. McCoy, No. 26043, decided in June, 1923, but not officially reported. In each of those cases it was argued on behalf of the plaintiff that the Act 79 of 1876, amending article 644 of the Code of Practice, had repealed *Page 309 
article 1992 of the Civil Code and article 647 of the Code of Practice, and that the Act 184 of 1918 had, in turn, abolished the exemption of public officers' salaries from seizure, as granted by article 644 of the Code of Practice, as amended by the acts of 1872, 1874, and 1876. The Court of Appeal ruled otherwise, and we approved the decision in each case. The ruling in Heymann v. Maloney was that the salary of an employee of the board of commissioners of the port of New Orleans, being the salary of a public officer, was not subject to garnishment. The Court of Appeal based its ruling upon the fact that the board of commissioners of the port of New Orleans was an agency of the state; but the fact that the board was a state agency, and not a parochial or municipal or other political corporation, had nothing to do with the case, because the second section of the statute creating the board, Act 70 of 1896, as amended by Act 36
of 1900 and Act 14 of 1915 (Ex. Sess.), gave the board the authority to sue and be sued, and gave it in fact "all of the rights, powers and immunities incident to corporations." Section 2. State v. Board of Commissioners, 153 La. 664, 96 So. 510; Board of Commissioners v. New Orleans Public Service,161 La. 741, 109 So. 408. The board of commissioners is therefore as completely subject to garnishment or other legal process as any public or political corporation could be. Our refusal to issue a writ of review in the case could not have been based rightfully upon any distinction between the board of commissioners of the port of New Orleans and any other political corporation, with regard to immunity from garnishment or other legal process. The ruling of the Court of Appeal in Huntington v. McCoy was that the salary of the clerk of the criminal district court for the parish of Orleans was not subject to seizure by garnishment process against the city treasurer. Surely there was no more of the character of *Page 310 
a state agency, or immunity from garnishment process on that ground, in that case than there is here. The Court of Appeal in that case cited Heymann v. Maloney, and said:
 "This case [Heymann v. Maloney] was taken to the Supreme Court on a writ, and it was there decided the writ would not be granted because the court's decision was the only one that could be rendered in cases of this character.
 "The decisions of the Supreme Court control this court in its opinions and judgments, and we are bound to follow them."
The decision of the Court of Appeal in the present case cannot be reconciled with that which we approved in Heymann v. Maloney and in Huntington v. McCoy. The assessor's salary in the hands of the parish treasurer is a public fund, contributed partly by the state, partly by the parish, and partly by each of the taxing districts that the tax assessor serves.
 "Debts due to defendant from the government or its agencies are generally held exempt from garnishment, at least until the government or its agency has lost control of it, not only on account of the capacity of the garnishee's holding or indebtedness, but also because the debt or appropriation is not deemed to belong to defendant until it has been paid over to him. Also the same public policy which exempts the government and its agencies from garnishment process forbids the use of garnishee process to divert public funds from the purpose to which they have been appropriated by law." 28 C.J. p. 128, § 168.
"Another reason [why a public officer's salary is not subject to garnishment] is the fact that moneys sought to be garnished, as long as they remain in the hands of the disbursing officers of the government, belong to the latter, although the defendant in garnishment may be entitled to a specific portion thereof; consequently it cannot, in a legal sense, be considered a portion of his effects, and, therefore, is not liable to garnishment, under process issued for the purpose of levying upon and subjecting such individual's property to the satisfaction of a judgment recovered against him.
 "81. County. — In the absence of express statutory provision clearly evincing the intention to grant the use of the process of garnishment against counties, public policy forbids that they *Page 311 
should be subjected to the process. The statutes in force in some states, however, permit the garnishment of counties. But this is not authorized by a statute permitting the garnishment of persons, corporations, bodies politic and corporate, or even municipal corporations, though a statutory provision authorizing garnishment proceedings against every municipal or other corporation or quasi corporation has been held to authorize garnishment process against a county. A judgment against a county as garnishee has been declared void in jurisdictions which deny the right to charge a county as garnishee. Furthermore, a county cannot waive its exemption from garnishment. If such waiver is made, it must be by the defendant in the garnishment proceedings whose interest and right are involved." 12 R.C.L. pp. 842, 843, §§ 80 and 81.
If the act of 1918 could not have had any other purpose — in omitting that part of the act of 1876 which exempted officers' salaries from seizure — than to repeal in that respect article 1992 of the Civil Code and 647 of the Code of Practice, it might be inferred that the Legislature intended to repeal them by repealing all laws or parts of laws in conflict with the new act. But the new act, apparently, had another and important purpose and effect. It eliminated from article 644 of the Code of Practice, as amended by the acts of 1872, 1874 and 1876, the exemption of officers' salaries from seizure, and left in force article 1992 of the Civil Code and article 647 of the Code of Practice, exempting from seizure the salaries of public officers as those articles had been construed in Vance v. Lafferanderie and Conrey v. Copland, before article 644 of the Code of Practice was amended by the act of 1872.
The question has often arisen — and is sometimes very doubtful — whether an employee of the government, federal, state, parochial, or municipal, is so employed as to be deemed an officer, within the meaning of the law exempting public officers' salaries from seizure. The doubt in such cases arises, perhaps, from the fact that in our scheme of government the highest of public officers are *Page 312 
only public servants. There has never been any doubt, however, that an officer elected by the people, as the defendant in this case was, is a public officer within the meaning of the term in the law exempting the salaries of public officers from seizure. In the absence of any statute on the subject, public policy would forbid an individual to stop payment of the salary of such an officer, and thereby make it impossible for him to continue in the performance of his official duties.
The judgment of the Court of Appeal is annulled, and the judgment of the district court is reinstated and made the judgment and decree of this court. The plaintiff is to pay all costs of these garnishment proceedings.
OVERTON, J., concurs in part and dissents in part, and hands down reasons.
THOMPSON, J., concurs in dissenting opinion of Mr. Justice OVERTON.
ST. PAUL, J., concurs in the decree, and assigns reasons.