No. 3894

Second Circuit

---

## FESTERVAND v. LASTER

---

(November 7, 1930. Opinion and Decree.)
(December 23, 1930. Rehearing Refused.)
(February 2, 1931. Writs of Certiorari and Review Refused by Supreme Court.)

---

Richard H. Switzer, of Shreveport, attorney for plaintiff, appellant.

Julius T. Long, of Shreveport, attorney for defendant, appellee.

DREW, J. Plaintiff brought this suit in the district court of Caddo parish against the defendant for the sum of $900, alleged to be due him for room and board and for services rendered in investigating the death of her husband preparatory to the filing of suit for compensation.

He alleges that the defendant is a resident of the state of Texas, and, in order to give the court of Caddo parish jurisdiction, he attached a judgment rendered in the Caddo court in favor of defendant and her dependent child and against the Louisiana Oil Refining Corporation for compensation under the Workmen's Compensation Act of Louisiana, growing out of the death of her husband, who was killed while in the employ of the Louisiana Oil Refining Corporation.

Defendant filed a plea to the jurisdiction, excepting that the district court of Caddo parish was without jurisdiction for the reason that the property attached is a suit and judgment for the joint benefit of defendant and her infant child for weekly amounts of compensation based upon and secured under Act No. 20 of 1914 of the state of Louisiana, and that under said act and law, and particularly section 21 of the act, all claims and payments due under the act are exempt from levy or execution or attachment or garnishment, except under a judgment of court for alimony in favor of a wife or ascendants or descendants.

She prays that the exception to the jurisdiction be sustained, that the attachment be dissolved, and that plaintiff's suit be dismissed.

Plaintiff answered the exception to the jurisdiction, alleging that the exemption set up in the act does not apply to a judgment; that it does not apply to a nonresident of the state of Louisiana; and that it violates the Fourteenth Amendment to the Constitution of the United States, in that it denies to plaintiff the equal protection of the laws and is class legislation.

He prays that the exception to the jurisdiction be overruled.

The lower court sustained the exception to the jurisdiction, and dissolved the attachment and dismissed plaintiff's suit; and from that judgment he has appealed to this court.

The suit is one in rem, and, if the attachment falls, the suit necessarily falls also.

The first paragraph of section 21 of Act No. 20 of 1914, as amended by Act No. 85 of 1926 reads as follows:

"That claims or payments due under this act * * * shall not be assignable, and shall be exempt from all claims of creditors and from levy or execution or attachment or garnishment, except under a judgment of Court for alimony, in favor of a wife, or ascendant or descendant."

The paragraph quoted above is plain and its language clear, and, unless we can sustain one or more of the questions raised by plaintiff in his answer to the exception to the jurisdiction, the exception will have to be sustained and the case dismissed.

We will discuss the different questions raised in the order in which they have been presented.

Plaintiff contends that he is attaching a judgment and not a claim or payments due under the Workmen's Compensation Act, and that a judgment is an entirely different thing from a claim or payments due under that act. We cannot accept this contention as being correct.

There are many cases where the right to claim and receive money is not derived from or based upon the relation of debtor and creditor between parties, and judgments in such cases, recognizing the right and ordering its enforcement, are not necessarily judgments for debt.

A judgment in a suit under the Workmen's Compensation Act is not a judgment for debt, but an award by the court, recognizing the right of an employee or his dependents under the law, which fixes the duty of the employer in case of an injury to or the death of an employee in an accident arising out of and incidental to his employment. And while it is true that the act itself says that a judgment under it shall have the same force and effect as one under any other law, it is clear that such a judgment is not the same as any other. It is very closely related to a judgment for alimony, in that it may be extinguished by death of the one to whom it is awarded, by remarriage in case of a widow, or by the injured employee recovering fully from the injury he has been awarded judgment for. After six months from the date of its rendition, it is subject to modification on the application of either the employer or employee on the ground that the incapacity of the employee has subsequently diminished or increased. Execution, for the collection of the weekly payments under it, when the employer fails to make them, cannot be had by application to the clerk of the court, but must be by order of the court

itself, fixing the amount of payments in arrear. And penalties are also provided for failure to make the payments as they become due. The judgment of the court does not change the payments fixed by. law, but merely orders them to be made according to law. And whether the payments are collected by or without the aid of a judgment, they still are payments under the Workmen's Compensation Act, and all payments owing under the law are personal to the person entitled to them.

The second contention of plaintiff is that the exemption in the first paragra of section 21 of the act, as amended, and above quoted, does not apply to a non-resident of the state of Louisiana.

It certainly was not the intention of the lawmaker to say to the widow of a deceased employee that, in order for the compensation awarded her for the death of her husband to be secure from seizure by creditors, she would have to remain a resident of this state. If such was the intention of the Legislature, it failed to so state. And the general rule and better view, we think, is that, unless the exemption statute is expressly confined to residents, it also applies to non-residents of the state. 11 R. C. L. 505.

The Workmen's Compensation Act should be liberally construed in favor of its beneficiaries, and, so construing it, we cannot limit the exemption from seizure of its benefits to those of its beneficiaries who reside in the state of Louisiana. It is a humane law, founded on public policy, and the result of thoughtful, painstaking, and humane consideration. It was intended as a substitute for the defective and insufficient remedy theretofore existing for the adjustment of claims of employees or their dependents against employers for injury to or death of employees by accident in the course of their employment, and as a means whereby compensation might be had for every accidental injury or death coming within the provisions of the act, and the injured employee or his dependents in case of his death be protected against the delays and the extravagant attorney's fees incident to the former remedy, and as a method whereby he or they might receive regulated compensation, payable at stated periods, so as most effectually to carry out the purposes of the act, which are to provide the injured employee, or his dependents in case of death, with payments periodically over a fixed space of time with which to meet his or their continuing necessities. We can readily see that the public policy and humane thought behind the act are well defined. It is well known that laboring men travel from place to place in the course of their work, or in search of work, and, if the Legislature had intended the exemption to apply only to such beneficiaries of the act as were residents of the state of Louisiana, it would have said so.

One might reside in the state of Texas and be employed in the state of Louisiana under a contract of employment entered into here, and, if accidentally injured or killed in the course of his employment, he, if living, or his dependents, if dead, would be entitled to receive payments under the Compensation Act. And can it be said that the payments due him or them would not be exempt from seizure, while the payments due fellow workmen of his, or their dependents, residents of the state of Louisiana, for injury or death happening to the fellow workmen at the same time and place and under the same circumstances, would be exempt? We think not. Otherwise, the very purpose of the act would be defeated.

The better, and almost universal, rule is that the exemption statute should receive a liberal construction in favor of the debtor, to advance the humane purpose of preserving to the unfortunate or improvident debtor and his family the means of obtaining a livelihood and thus prevent him from becoming a charge upon the public. 11 Ruling Case Law, 492-493.

The general rule is that, unless the act expressly provides for no extraterritorial effect, the Workmen's Compensation Act has extraterritorial effect; and if one be employed in Louisiana by a Louisiana concern to perform labor and be sent into another state to perform that labor and is injured or killed accidentally in the course of his employment in that other state, he or his dependents can collect compensation under the Louisiana law, although the work was being performed in another state and the injury or death occurred in such other state. If this be true, we see no reason to limit the exemption from seizure contained in the act to residents of this state only.

In the case of 'Western Metal Supply Co. v. Pillsbury, 172 Cal. 407, 156 P. 491, 495, Ann. Cas, 1917E, 390; 12 A. L. R. 1207 note, the court said:

"If it may reasonably be thought that the best interests of the state, of the employers of labor, and of those employed, as well as of the public generally, are promoted by imposing upon the industry or the public the burden of industrial accident—and some such theory lies at the bottom of all workmen's compensation statutes * * * the residence and citizenship of the injured workman, or (if he shall have met death) of his dependents, are factors entirely foreign to the discussion. The legislature has determined that the employment of labor in given pursuits entails upon the employer certain responsibilities towards the persons performing the labor and those dependent upon them. There is no constitutional or rational ground for limiting the benefits of this legislative scheme to citizens or residents of this state. If the employment was such as to fall within the state's lawmaking jurisdiction, the legislature certainly had the power to pass laws operating uniformly upon all persons affected by such employment."

There is no evidence in the record that defendant has given up her residence in Louisiana and become a resident of the state of Texas. However, from briefs of both counsel for appellant and counsel for appellee, we presume it was admitted on the trial in the lower court that she had done so, and accordingly we have discussed the case from that viewpoint.

We are convinced that the permanent leaving of the state of Louisiana by defendant did not deprive her of the right of exemption from seizure provided by the act.

The third contention of plaintiff is that section 21 of Act No. 20 of 1914, as amended, is unconstitutional, in that it violates the Fourteenth Amendment to the Constitution of the United States by denying to plaintiff the equal protection of the laws and creating class legislation.

He contends that said section, in excepting from the exemptions therein set out judgments for alimony for the wife and ascendants and descendants, discriminates against him, an ordinary creditor, and gives to those holding such judgment an unfair preference.

There is a strong presumption that the Legislature understands and appreciates the needs of its own people, that its laws are directed to problems made manifest by experience, and that its discriminations are

based upon adequate grounds. Middleton v. Texas Power & Light Co., 249 U. S. 152, 39 S. Ct. 227, 63 L. Ed. 527; 6 Ruling Case Law, 380, 420, 426; Ward & Gow v. Himan Krinsky, 259 U. S. 503, 42 S. Ct. 529, 536, 66 L. Ed. 1033, 28 A. L. R. 1208.

In the last-cited case the court said:

"What was it they were aiming at, and how did they seek to accomplish it? We need not be sure of hitting upon a correct, much less a complete, explanation. Upon the general presumption referred to the questioned group must stand, unless it were demonstrated to a moral certainty, beyond a reasonable doubt, that the grouping could not possibly be explained on reasonable grounds."

In Ruling Case Law, volume 6, page 385, the following rule is laid down:

"In the exercise of its power to make classifications for the purpose of enacting laws over matters within its jurisdiction, the state is recognized as enjoying a wide range of discretion. The question of classification is primarily for the legislature, and it can never become a judicial question except for the purpose of determining, in any given situation, whether the legislative action is clearly unreasonable. Whenever the power to regulate exists, the details of the legislation and the exceptions proper to be made likewise rest primarily within the discretion of the state legislature. Before a court can interfere with the legislative judgment, it must be able to say that there is no fair reason for the law that would not require with equal force its extension to others whom it leaves untouched. When the classification is a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be presumed. The courts cannot require the legislature to specify its reasons for the classification, but they will always presume that the legislature acted on legitimate grounds of distinction, if any such grounds exist. Where there is a reasonable and practical ground of classification for legislative regulations under the police power, the classification should be sustained, even though some other classification or the absence of specific classifications would appear to some minds to be more in accord with the general welfare, since the discretion of selecting the subjects of police regulations is left to the general lawmaking power where there is no undoubted and irreconcilable conflict between the regulations and the provisions and principles of organic law. Accordingly it has been stated that where a classification can be sustained, it rests entirely within the discretion of the legislature to determine and establish its basis, and its determination when expressed in statutory enactment cannot be questioned successfully, unless it is so manifestly arbitrary, unreasonable, inequitable and unjust that it will cause an imposition of burdens on one class to the exclusion of another, without reasonable distinction."

A provision requiring uniformity of legislation does not mean that all laws must embrace all persons, since a law is said to be general or uniform, not because it operates alike upon every person in the state, but because it operates alike upon every person in the state who is brought within the conditions and circumstances prescribed by the law. Ruling Case Law, volume 6, page 420.

"Since an inheritance tax is based not on property but on the succession to property, and since the right to take property by devise or descent is the creature of the law, and not a natural right, the state which confers it may impose conditions on it and may discriminate between relatives and strangers, and it may grant exemptions, without in any way violating the constitutional provisions as to uniformity and equality of taxation or the equal protection of the laws." Ruling Case Law, volume 6, pages 427-428.

The above rule, as laid down in Ruling Case Law, is very applicable to the case before us. The right to receive payments

under the Workmen's Compensation Law is not a natural right, but is a creature of the law, while the right to receive alimony is a natural right.

In the case of Weyand v. Weyand, 169 La. 392, 125 So. 282, the court said:

"An order of court compelling a man to support his wife during the pendency of a suit for divorce or for separation from bed and board compels him merely to perform a natural obligation, for the neglect of which, even without any such order of court, he would be subject to criminal prosecution."

Furthermore, alimony is only allowed to relatives, wife, ascendants, and descendants, and, if there is any discrimination in section 21 of Act No. 20 of 1914, as amended, it is one between relatives and strangers, a discrimination that is allowed.

The general rule is that claims for alimony are not subject to exemption statutes. 11 Ruling Case Law, page 537.

It is the natural and legal duty of a father to support, maintain, and educate his children. Gates v. Renfroe, 7 La. Ann. 569; Walker v. Barrow, 43 La. Ann. 863, 9 So. 479.

Illegitimate children, when their filiation is proven, are entitled to alimony from their father's estate. Civil Code, arts. 230, 231; Collins v. Hallier, 12 La. Ann. 678; Civil Code, arts. 206, 241, 919; Liautaud v. Baptiste, 3 Rob. 441.

An order for alimony, in a divorce suit, is nothing more than the judicial sanction and enforcement, under abnormal conditions, through the judiciary, of the duty of the husband to support his wife. Civil Code, arts. 119, 120; State ex rel. Huber v. King, Judge, 49 La. Ann. 1503, 22 So. 887.

Alimony is not a debt, and one to whom alimony has been awarded, is not a creditor of the defendant in the alimony proceedings. The father owes alimony to his offspring, and the husband to his wife. It is a natural obligation, not founded on contract.

The section of the act referred to says that claims or payments under the act shall be exempt from all claims of creditors. There cannot be a creditor without a debtor. A judgment for alimony lacks some of the essential attributes of a debt. One such attribute is certainty as to amount and maturity. A judgment for alimony generally provides a monthly allowance. The total and the maturity depend upon how long the wife shall live, when, if at all, she remarries, and how long the minor child shall live. Thus both in amount and maturity it is uncertain.

It was held in Dunbar v. Dunbar, 190 U. S. 340, 23 S. Ct. 757, 47 L. Ed. 1084, that a discharge in bankruptcy is no bar to enforcing an agreement of a husband to pay an annuity to his divorced wife during her life, or until she remarries, because there is a substantial impossibility of estimating the value of the contingency of a remarriage. Unlike most judgments, certainty is lacking, because the alimony order remains in court and is subject to be changed or canceled at any time. Wetmore v. Markoe, 196 U. S. 68, 25 S. Ct. 172, 49 L. Ed. 390, 2 Ann. Cas. 265; Audubon v. Shufeldt, 181 U. S. 575, 21 S. Ct. 735, 45 L. Ed. 1009.

In the Audubon case, the Supreme Court of the United States approved Alexander v. Alexander, 13 App. D. C. 352, 45 L. R. A. 806, in holding that the allowance of alimony is not in the nature of an absolute debt. It is not unconditional and unchangeable. It may be changed in amount

even when payments are in arrear on good cause shown ,to the court having jurisdiction.

The Constitution prohibits imprisonment for debt, but in Louisiana, as well as in other states of the Union, one failing to pay the alimony ordered by the court may be sentenced to jail for contempt of court. It is universally held that such a judgment is not a debt within the prohibition against imprisonment for debt.

Such a debt is not a provable debt within the meaning of the Bankruptcy Act. Audubon v. Shufeldt, supra; Dunbar v. Dunbar, supra; Wetmore v. Markoe, supra.

The homestead is not subject to an ordinary debt, yet is subject to an allowance for alimony. Schooley v. Schooley, 184 Iowa, 835, 169 N. W. 56, 11 A. L. R. 116.

Neither is pension money exempt from an alimony judgment.

A number of authorities hold that enforcement of an award for alimony is not the obligation of a debt, but a sequestration, akin to a decree for specific performance or partition. That, by analogy to marriage settlements, alimony is a setting aside of part of the joint estate for the purpose of avoiding the family becoming a public charge.

It was ruled in Ex parte Perkins, 18 Cal. 60, that an allowance of alimony is not technically a debt; that the husband owes the wife no specific amount of money; and that the judgment, instead of evidencing a debt, is the making definite of an imperfect obligation—that of support—a compelling of the husband to perform a duty. Schooley v. Schooley, 184 Iowa, 835, 169 N. W. 56, 11 A. L. R. 119.

Alimony does not arise from any business transaction, but from the relation of marriage and the relation of parent and child. It is not founded on contract, express or implied, but on a natural and legal duty.

In State ex rel. Cook v. Cook, 66 Ohio St. 566, 64 N. E. 567, 568, 58 L. R. A. 625, in reasoning why an award of alimony was not within the prohibition against imprisonment for debt, the court said:

"It seems manifest that, so far as the obligation of the husband enters into the consideration and affords a basis for the court's action, it is not a debt in the sense of a pecuniary obligation. It arises from a duty which the husband owes as well to the public as to the wife, but it is not upon any specific contract. * * * The liability originates in the wrongful act of the husband, against the consequences of which the public as well as the wife has the right to be protected."

The court, by its decree, makes specific a general duty to support created by the marital relation and by public policy. Schooley v. Schooley, 184 Iowa, 835, 169 N. W. 56, 11 A. L. R. 117.

Alimony, as a rule, is an allowance out of a portion of the husband's earnings or current income. It does not matter from what source his income is derived, it is not exempt from a judgment of alimony. Therefore, the exception made in section 21 of Act No. 20 of 1914, as amended, was unnecessary and only restated that which was the law before its enactment.

We therefore are of the opinion that section 21 of Act No. 20 of 1914, as amended, is not unconstitutional as class legislation or as denying the equal protection of the law. The exception covers natural obligations only, which are entirely different and distinct from ordinary debts.

The act states that the claims or payments under it are not assignable and are exempt from all claims of creditors, and from attachment, etc.; therefore plaintiff was without right to attach the judgment in favor of the defendant, and therefore the court of Caddo parish was without jurisdiction of his suit.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be affirmed, with all costs.