## HAWTHORN v. DAVIS.

### No. 924.

Court of Appeal of Louisiana. First Circuit.

March 8, 1932.

See, also, 16 La. App. 172, 133 So. 532.

Frank E. Powell, of DeRidder, for appellant.

Ped C. Kay, of DeRidder, for appellee.

MOUTON, J.

The defendant, T. E. Davis, in payment of a judgment obtained in compensation for injuries, received $925, which he deposited in the First National Bank of De Ridder.

This sum of money so deposited, and which had not been mixed or mingled with any other fund, was seized by plaintiff, Harry Hawthorn, by way of garnishment in execution of a judgment he had obtained against Davis, defendant.

The defendant avers that he has no other money, that it is the identical money he received in payment of his judgment in compensation, and that it is exempt from seizure under the laws of this state. The exemption urged was maintained below.

The exemption claimed rests on section 21 of the Employers' Liability Act, Act No. 85 of 1926, which reads as follows: "That claims or payments due under this act * * * shall not be assignable, and shall be exempt from all claims of creditors and from levy or execution or attachment or garnishment, except," etc.

The foregoing excerpt embraces the portion of the section of the act pertinent to the issue presented for solution. The language of that section refers to "claims or payments due" that cannot be assigned, and which are specially exempted from seizure. The word "payments," as therein used, certainly does not refer to "payments" that have been received, and as employed in that section is made the equivalent of the claims to which the employee may be entitled. It is therefore evident from the wording of that section of the statute that the exemption thus created has no reference whatsoever to money collected or received by the employee in compensation under the provisions of the act.

In the able opinion of our learned brother of the district court, he recognizes, what we have hereinabove said, that the express exemption contained in section 21 does not apply to "payments" received by the beneficiary. In connection therewith he says: "It is thought that this express exemption does not exclude an exemption which the entire purpose and tenor of the Act appears to establish." He then says: "The liberal interpretation enjoined by the Act and practiced by the Courts in favor of the laborer adds weight to this conclusion"—citing Festervand v. Laster, 15 La. App. 159, 130 So. 634.

In the opinion in the above-cited case, the court, in alluding to section 21 of the act, granting the exemption to claims or payments due, says that its language is plain and clear. No doubt, it is, but we have been unable to find in the general provisions of the act the slightest indication that the purpose of the exemption was to cover or include any money which had been paid the employee in satisfaction of "claims or payments due." If such were the intendment of the act, why did the Legislature, in framing the statute, specifically declare that the exemption should apply to "claims or payments due?" Such a provision would have been altogether useless and nugatory if money received was intended to be covered by the exemption. If, on the other hand, the legislative purpose was to include in its exemption funds paid to or realized in compensation by an employee, a word or two would have consecrated that fund to the beneficiary, protecting it from seizure by garnishment or otherwise.

The district judge refers to the liberal construction which has been given by the courts to the compensation statute. There is no doubt that such has been the trend of opinions in the court of this and other states.

In the instant case, however, if we were to extend the exemption to money or funds collected by the employee, it could not be done under a judicial construction or interpretation of the act. In order to effect that purpose, we would have to add some words to section 21, so as also to include an exemp-

tion of funds or money realized by the employee. This could not be effected by construction or interpretation, but could result only from an additional enactment to that section, thus extending the exemption to money collected and deposited in bank.

Such a liberal construction might also lead to results manifestly inequitable. In illustration of this idea, let us suppose a case where money, clothes, or food had been furnished by a creditor to an employee during the period of his disability, and, after he had collected the amount due him in compensation and deposited it to his credit, that this sum were seized under garnishment proceedings. To hold that it was exempt from seizure would obviously be most unjust and inequitable. Such considerations or others beyond our reach may have been the reason why the exemption was restricted to "claims or payments due."

At any rate, the construction as a general rule, by the courts of exemptions couched in the language of section 21, has been limited to amounts due, and not to money received.

Article 647, Code Prac. provides for the seizure by the sheriff of all property, rights, credits, and sums of money due by the debtor, "unless it be for alimony or salaries of office."

In the case of Mary E. Kirkpatrick v. Finney & Byrnes, Man. Unrep. Cas. 202, the court said the salary of a public officer is exempt from seizure, "whenever such salary ceases to·be due and the money is reduced into possession, its exemption ceases, and it becomes liable to seizure or garnishment if he has loaned it out, or deposited it in a bank," etc. This decision is in perfect harmony with article 647, Code Prac., which protects the salary of the officer when due to him. After it is collected and deposited to his credit, it enters, we think, the channels of commerce, and the exemption ceases. ·

In the case of McIntosh v. Aubrey, the Supreme Court of the United States in 185 U. S. 122, 22 S. Ct. 561, 562, 46 L. Ed. 834, was called upon to interpret the following provision of the pension law: "No sum of money due, or to become due, to any pensioner, shall be liable to attachment, levy, or seizure, by or·under any legal or equitable process whatever, whether the same remains with the Pension Office or any officer or agent thereof, * * * but shall inure wholly to the benefit of such ·pensioner."

In passing on that provision of the pension law, the court said: "The simplicity' and directness of the statute are impaired by attempts to explain it by the use of other terms than its own. That money received is not money due * * * would seem, if real distinctions be regarded, as obvious enough, without explanation. * * * "

The court then concurs with the judge below in holding: "That 'the exemption provided by the act protects the fund only while in the course of transmission to the pensioner. When the money has been paid to him,' " says the court, " "it has "inured wholly to his benefit," and it is liable to seizure as opportunity presents itself.' "

Here, when the money was received and placed by defendant as his personal funds in the bank, it inured wholly to his benefit, and the exemption it enjoyed while a mere claim under section 21 of the Employers' Liability Act ceased, and it became subject to seizure as was held for the salary of an officer in Kirkpatrick v. Finney, Man. Unrep. Cas. 202. In that case, the court said funds so deposited were liable to seizure just as would be any other funds, or property purchased therewith, thus assimilating. money so realized with property acquired with such funds.

It seems that the extension of the exemption contended for by defendant is grounded on the reasoning that, as the object of the statute was to protect the employee, and to prevent him from becoming a burden or charge upon the public, the funds due him, though paid in, are immune from seizure. If such be the purport of the statute, why should we not extend the exemption to property acquired with funds realized by the employee as compensation for injuries received by him while in the service of his employer? Such a construction would completely secure the employee and his family from becoming objects of charity, or a burden to the community, thus satisfying the full purpose of the statute, if its framers so intended.

In the course of the opinion, Festervand v. Laster, 15 La. App. 159, 130 So. 634, above referred to, the court took occasion to remark that a judgment for compensation under the Workmen's Liability Act is not a judgment for debt, that it is closely related to a judgment for alimony, and seems to have considered it in that light.

Article 647, Code Prac., says that all the property of the debtor is liable to seizure, and sums of money due him, "unless it be for alimony or salaries of office."

In the Man. Unrep. Cas. 202, above cited, the court said, when the salary is reduced to possession by the officer, the exemption ceases.

When the alimony referred to in that article of the Code of Practice is reduced to possession for the same reason, the exemption therein provided for ceases.

The protection under the article extends only to sums which "may be due" to the officer for his salary, or to a debtor who may be entitled to alimony. Hence, if the compensation of an employee, though classified as alimony, is not still due, but has been realized or reduced to possession, the exemption ceases, and it is subject to seizure.

■ If there be any conflict between the provisions of article 647, Code of Practice, and any articles of the Civil Code on this sub-

ject, the article of the former must prevail. Fischer v. Dubroca, 163 La. 292, 111 So. 710.

Our conclusion above stated is in keeping with the ruling of the Supreme Court of the United States on a similar question in the McIntosh Case, hereinabove cited.

Civil Code, art. 13 reads: "When a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit."

In this case the exemption is "clear and free from all ambiguity" in limiting its operation or effect to claims or payments "due," and the only way the exemption could be extended to funds paid in or realized by the employee would be in disregarding the letter of the statute "under the pretext of pursuing its spirit."

To break up the monotony of the foregoing analysis, let us return to what we said about the palpable injustice that might result under the Compensation Act if the funds when paid in were also protected by the exemption provided for in section 21. This act, it will be noted, allows compensation for the loss of a thumb, first finger, or great toe. Let us suppose, for the purpose of illustration, that compensation was paid for such an injury; that the amount so collected was deposited in bank to the credit of the employee, who had entirely recovered from his injury, and was again perfectly competent to earn his living in the occupation in which he had been engaged before the accident. Under the theory of counsel for defendant, the fund thus deposited would be exempt from seizure as well as are the claims or payments "due" an employee.

The exemption for the amount so realized could certainly not find protection under the letter of section 21. It could certainly not be shielded from seizure under the contention that this employee, who had been entirely restored to his former condition, and was as before entirely able to earn his living in the same occupation, had become an object of charity or a burden to the public upon which the judgment below seems to have been grounded to a large extent. Even if we were to pursue the pretended spirit of the act by which counsel seems to have been allured, still we would be unable to find in its general provisions, while indulging in the most liberal interpretation, any ground upon which we could rest the contention that such funds were justly entitled to protection against seizure for the just debts of this employee.

It is certainly impossible to find in the exemption set out in that section of the statute any authority for the exemption claimed herein nor any from the body of the act or in its general purpose.

■ To support the contention of the defendant, we would have, under the theory

of a liberal construction of the act, to graft or incorporate an extension to the exemption provided for in section 21, so as to afford protection to the sum deposited by defendant in the First National Bank of De Ridder.

Such an extension of the exemption would not be justified by the general provisions of the act nor by section 21, and would be tantamount to a piece of legislation on our part, an invasion of the legislative department, going beyond the functions of courts which should say what the law is, and not what it should be, and in violation of the constitutional provision dividing the powers of the government in distinct departments. It is therefore ordered, adjudged, and decreed that the judgment appealed from be avoided, annulled, and reversed; it is further decreed that the rule obtained herein by plaintiff against defendant, T. E. Davis, be and is hereby made absolute; that the deposit of $925 by T. E. Davis in the First National Bank of De Ridder be decreed his property; that the said bank be and is hereby ordered to turn over said amount to the sheriff of Beauregard parish or a sufficient sum thereof to pay the sum of $568.44, with legal interest at the rate of 5 per cent. from judicial demand as per judgment obtained by plaintiff, Harry Hawthorn v. Kolb and Davis; that the sheriff deliver to plaintiff the amount of his judgment against Kolb and Davis, with legal interest, as aforesaid; and that defendant pay all costs of these proceedings.