Dear Representative Johns:
Reference is made to your recent request for an opinion of this office regarding the distribution of slot machine gaming revenue for purse and breed supplements at Louisiana pari-mutuel live horse racing facilities. Your correspondence states:
 "The focus of my request lies in the intent of the Louisiana Legislature under La.Rev.Stat. 27:361 which defines the allocation of purse money. I am particularly interested in the quarter horse allocation. In reading the legislation, it appears to be clear that 60% of the money is reserved for accredited Louisiana quarter horses. What is unclear is how the remaining 40% is to be allocated among unrestricted [races in which quarter horses bred in all states may compete], and restricted races [which are limited to Louisiana-bred horses]."
We have examined the provisions of La.R.S. 27:361 that are pertinent to your request. Those provisions state as follows:
 "B. As a condition of licensing and to maintain continued authority for the conduct of slot machine gaming at the licensed eligible facility, the owner of the licensed eligible facility shall:
* * *
 (4) Contribute to the support of pari-mutuel wagering facilities in the state at large and the horse breeding industry by paying annually from the annual net slot machine proceeds received from slot machine gaming operations at the licensed eligible facility as provided in this Paragraph:
 (a) The licensed eligible facility shall pay a fixed percentage of fifteen percent of the annual net slot machine proceeds received from slot machine gaming operations at the licensed eligible facility to supplement purses as follows:
 (i) Seventy percent to supplement purses for thoroughbred races at that facility, thirty percent of which shall be for Louisiana-bred thoroughbred horses. Four percent of this amount shall go to the Horsemen's Benevolent and Protective Association in accordance with law.
 (ii) Thirty percent to supplement purses for quarter horse races at that facility, sixty percent of which shall be for Louisiana-bred quarter horses. Four percent of this amount shall go to the Horsemen's Benevolent and Protective Association in accordance with law." (Emphasis supplied).
With regard to the fifteen percent of the annual net slot machine proceeds received from slot machine gaming operations at the licensed eligible facilities required by La.R.S. 27:361 to be paid to supplement purses (the "Supplement Amount"), it is clear that thirty percent of the Supplement Amount (the "Thirty Percent Amount") was ear marked by the Legislature to supplement purses for quarter horse races at the licensed eligible facility. It is our opinion that sixty percent of the Thirty Percent Amount (the "Allocated Amount") must be used to supplement purses for Louisiana-bred quarter horses.
With regard to the remaining portion of the Supplement Amount (the "Unallocated Amount"), we have examined the entirety of La.R.S. 27:361, and the other provisions of Title 27 of the Louisiana Revised Statutes (the Louisiana Gaming Control Law). We have also examined the provisions of Title 4 of the Louisiana Revised Statutes which pertain to Horse Racing. The Unallocated Amount is not allocated to or among restricted or unrestricted races by the provisions of La.R.S. 27:361 quoted hereinabove, nor is the Unallocated Amount allocated by any other provision of La.R.S. 27:361. We also note that although various provisions of law pertaining to horse racing La.R.S. 4:141, et seq) address purse supplements and breed supplements derived from other revenues and sources, no provision of law, other than La.R.S. 27:361, addresses purse supplements derived from slot machine gaming revenues.
While the Legislature certainly can, and may, choose to allocate the Unallocated Amount between restricted and unrestricted races, it may well have been the legislature's intent to leave the Unallocated Amount unallocated in order to give associations or licensees flexibility in determining which races it chose to supplement. Or, in light of the legislature's clear allocation of the Allocated Amount to races of Louisiana-bred horses, the legislature could choose to allocate all of the Unallocated Amount to supplement purses for unrestricted races.
Absent a clear indication of legislative intention to allocate the Unallocated Amount, it is beyond the purview of this office to determine whether or not the Unallocated Amount was left unallocated due to legislative design or oversight. Furthermore, we must respectfully refrain from substituting our judgment for the legislative prerogative. Unless and until the legislature acts in this regard, no provision of law requires a specific allocation of the Unallocated Amount.
In reaching our determination herein, we are guided by the following rules of statutory interpretation. When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit. La.R.S. 1:4. When a law is clear and unambiguous, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La.C.C. Art. 9. Courts cannot graft onto, or incorporate into statutes additional provisions under the theory of liberal construction. Hawthornv. Davis, 140 So. 56, (La.App. 1932). It is not within the power of the courts to add to a statute words not written therein. Leopold v.Schmidt, Orleans No. 9256, (App. 1923). Courts can do no more than interpret and construe statutes, and cannot, under the guise of interpretation, assume legislative functions. State v. Vallery,34 So.2d 329 (La. 1948); Doctrine of contemporaneous construction does not apply where language of statute is free from ambiguity. State v. J.Watts Kearny Sons, 160 So. 77 (La. 1934).
We trust the foregoing to be of assistance. Should you need further assistance in this or other areas of the law, please do not hesitate to contact us.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: _______________________________ JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
RPI/JMZB:sam
Date Released: September 18, 2002